STATE OF NORTH CAROLINA v. BILL EDWARD HALL, Defendant

No. COA97-1560

(Filed 1 December 1998)

## 1. Indictment and Information— True Bill not checked—no evidence of presentation to court—presumption of validity

Indictments charging defendant with armed robberies were valid where both were signed by the grand jury foreman and clearly indicated the charges against defendant, but neither of the boxes designating "True Bill" or "Not a True Bill" were checked and there was no evidence of the presentation of a true bill to the trial court. An indictment affords the protection guaranteed by the Constitution of North Carolina so long as it charges the criminal offense in a plain, intelligible and explicit manner.

## 2. Confessions and Incriminating Statements— Miranda warnings— interrogation not custodial

The trial court did not err in an armed robbery prosecution by not suppressing defendant's statement to officers based on a lack of Miranda warnings where there was sufficient evidence in the record to find that defendant was not in custody when he confessed.

## 3. Confessions and Incriminating Statements— signed transcription—not a second statement

A written statement was not a second "un-Mirandized" statement where a detective transcribed defendant's words and defendant signed the statement. The act of signing the statement merely finalized the confession.

## 4. Confessions and Incriminating Statements— statement about one offense while discussing another—right to counsel

The trial court did not err in an armed robbery prosecution by admitting a statement about this robbery (the Firehouse robbery) made while defendant was talking about other robberies after asserting his Sixth Amendment right to counsel for the Firehouse robbery. The Sixth Amendment right to counsel is offense specific.

Judge WALKER concurring.

Judge GREENE dissenting.

Appeal by defendant from judgment entered 10 September 1997 by Judge Loto G. Caviness in Gaston County Superior Court. Heard in the Court of Appeals 6 October 1998.

> *Michael F. Easley, Attorney General, by Joyce S. Rutledge, Associate Attorney General, for the State.*

> *Malcolm Ray Hunter, Jr., Appellate Defender, by Anne M. Gomez, Assistant Appellate Defender, for defendant-appellant.*

SMITH, Judge.

Defendant was charged with two counts of robbery with a dangerous weapon for the robbery of Anchor Seafood Restaurants, Inc., d/b/a Firehouse Fish-N-Fixins Restaurant (Firehouse) and one of its employees. Defendant pled not guilty to both counts and the cases were consolidated for hearing. The jury found defendant guilty on both counts and defendant was sentenced to a term of imprisonment.

I.

[1] Defendant first assigns as error the grand jury indictments charging him with the crimes. Both indictments were signed by the grand jury foreman and clearly indicated the charges against defendant, but neither of the boxes designating "True Bill" or "Not a True Bill" were marked. Defendant claims this omission renders the indictments fatally defective and thus invalid. We disagree.

Article I, section 22 of the North Carolina Constitution states that "no person shall be put to answer any criminal charge but by indictment, presentment, or impeachment." N.C. Const. art. I, § 22. The purposes of this section are not to require adherence to mere technicalities of law, but to provide notice to the defendant of the crime with which he is charged, to protect the defendant from twice being tried for the same offense, to enable the defendant to adequately prepare a defense, and to enable the court to properly pronounce the sentence imposed. *See State v. Stokes*, 274 N.C. 409, 411, 163 S.E.2d 770, 772 (1968). So long as the indictment charges " 'in a plain, intelligible and explicit manner,' the criminal offense the accused is 'put to answer,' [then that indictment] affords the protection guaranteed by Art. I, Secs. 11 and 12, Constitution of North Carolina." *State v. Helms*, 247 N.C. 740, 742, 102 S.E.2d 241, 243 (1958) (citations omitted); N.C. Gen. Stat. § 15-153 (1983) (indictment is sufficient in form if it states the charge against the defendant in a "plain, intelligible, and explicit manner"); *see also State v. Lowe*, 295

N.C. 596, 603, 247 S.E.2d 878, 883 (1978) (indictment constitutionally sufficient if it apprizes defendant of charge).

This does not end our inquiry, however, because N.C. Gen. Stat. § 15A-644(a) contains certain requirements for a valid indictment. This section states that an indictment must contain the following:

(1) The name of the superior court in which it is filed;

(2) The title of the action;

(3) Criminal charges pleaded as provided in Article 49 of this Chapter, Pleadings and Joinder;

(4) The signature of the prosecutor, but its omission is not a fatal defect; and

(5) The signature of the foreman or acting foreman of the grand jury *attesting the concurrence of 12 or more grand jurors in the finding of a true bill of indictment.*

N.C. Gen. Stat. § 15A-644(a) (1997) (emphasis added). Although subsection (a)(5) sounds mandatory, it has been held to be merely directory. *See State v. House*, 295 N.C. 189, 201, 244 S.E.2d 654, 660 (1978); *State v. Midyette*, 45 N.C. App. 87, 262 S.E.2d 353 (1980). Reading the provision as directory "makes substance paramount over form." *Midyette*, 45 N.C. App. at 89, 262 S.E.2d at 354; *see House*, 295 N.C. at 203, 244 S.E.2d at 662 ("to interpret [this provision] as requiring the quashing of a bill of indictment . . . [for failure to attest to concurrence of twelve or more jurors] would be to attribute to the Legislature an intent to paramount mere form over substance"). Finally, with regard to this provision, it is important to note that *State v. McBroom*, 127 N.C. 528, 37 S.E. 193 (1900), which held that the endorsement "a true bill" is essential to the validity of an indictment, was expressly overruled in *State v. Sultan*, 142 N.C. 569, 54 S.E. 841 (1906).

Although the attestation by the foreman is a mere technicality, there must be some evidence in the record that a "true bill" was presented to the court. *See Midyette*, 45 N.C. App. 87, 262 S.E.2d 353; *see also Sultan*, 142 N.C. at 573, 54 S.E. at 842 ("[N]o endorsement by the grand jury is necessary. The record that it was presented by the grand jury is sufficient in the absence of evidence to impeach it."); *State v. Avant*, 202 N.C. 680, 682, 163 S.E. 806, 807 (1932) ("There is no statute in this State requiring that a bill of indictment, which has been duly considered and returned into court by a grand jury shall be endorsed

by the foreman or otherwise, as 'a true bill,' or as 'not a true bill.' "). This Court, in *Midyette*, a case very similar to the one before us, held that "an indictment returned by the grand jury is not defective or insufficient where the foreman failed to mark the box indicating a true bill or not a true bill *where the court minutes show that all bills of indictment were returned true bills.*" *Midyette*, 45 N.C. App. at 90, 262 S.E.2d at 355 (emphasis added). Likewise, the North Carolina Supreme Court has stated,

> It is provided by statute . . . that grand juries shall return all bills of indictment in open court through their acting foreman. . . . No endorsement by the foreman or otherwise is essential to the validity of an indictment, which has been duly returned into court by the grand jury, and entered upon its records. The validity of the indictment is determined by the records of the court, and not by the endorsements, or the absence of endorsements on the bill.

*Avant*, 202 N.C. at 682-83, 163 S.E. at 807 (citations omitted).

The problem we face in this case is that the parties have provided us with *no evidence whatsoever* of the presentation of the bill of indictment to the trial court, thus rendering us unable to determine from the record the validity of the indictment. We must therefore rely on the presumption of validity of the trial court's decision to go forward with this case. It is the defendant's burden to prove reversible error which prejudiced the outcome of his case. *See State v. Blackstock*, 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985). Because defendant failed to meet this burden by not providing this Court with evidence that the trial court was unjustified in assuming jurisdiction over this case, we hold that the indictment is valid. However, because this issue was raised for the first time on appeal, this holding is without prejudice to defendant's right to file a motion with the trial court regarding the validity of the bill of indictment.

## II.

[2] Defendant next asserts that the trial court erred in not suppressing his 8 January 1997 statement to the police. On this date, detectives found defendant at a friend's home and asked him to accompany them to the police station. Defendant agreed. Detectives offered defendant a ride in the police car, which defendant accepted. They then drove defendant to the station and questioned him about the Firehouse robbery. Defendant was advised that he did not have to stay, but that the officers needed to talk to him. No *Miranda* warn-

ings were given. The questioning lasted approximately one or one and one-half hours, wherein defendant made inculpatory statements regarding his involvement in the robbery. Defendant's counsel objected to the introduction of this statement on the ground that defendant was "in custody" and had not been given his *Miranda* warnings. The trial court, after a lengthy *voir dire* hearing, overruled this objection and allowed the introduction of this statement, stating:

> At this time as to the statement made on January 8th, the Court will find that this statement and the events leading up to it, he had not been arrested at that time. Also, that he had voluntarily gone on request to discuss matters with the law enforcement officers. The Court will further find that it appears that there was nothing extraordinary as to promises or leniency for his assistance. The Court will not suppress the January 8th statement as it so appears.

At the outset, we should note that "[t]he trial court's findings of fact after a *voir dire* hearing concerning the admissibility of the confession are conclusive and binding on the appellate courts when supported by competent evidence." *State v. Davis*, 305 N.C. 400, 410, 290 S.E.2d 574, 581 (1982) (citing *State v. Jenkins*, 292 N.C. 179, 232 S.E.2d 648 (1977)). The question of whether defendant was in custody, for purposes of *Miranda*, is a question of law, however, and fully reviewable by this Court. Although the trial judge found that defendant "had not been arrested" at the time the statement was made, there was no finding as to whether defendant was in custody. "The absence of such a finding, however, does not prevent this Court from examining the record and determining whether defendant was in custody." *State v. Torres*, 330 N.C. 517, 525, 412 S.E.2d 20, 24 (1992) (citing *Davis*, 305 N.C. at 414-15, 290 S.E.2d at 583).

A person is in custody, for purposes of *Miranda*, when he is "taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706 (1966). This does not extend to pre-arrest investigative activities. *See State v. Pruitt*, 286 N.C. 442, 448, 212 S.E.2d 92, 96 (1975). The United States Supreme Court has spoken on the issue of whether a defendant is in custody. "In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a "formal arrest or restraint on freedom of move-

ment" of the degree associated with a formal arrest.' " *Stansbury v. California*, 511 U.S. 318, 322, 128 L. Ed. 2d 293, 298 (1994) (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 77 L. Ed. 2d 1275, 1279 (1983) (per curiam) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 50 L. Ed. 2d 714, 719 (1977))). Furthermore, the interrogation at issue "must reflect a measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300, 64 L. Ed. 2d 297, 307 (1980).

The test for determining whether the interrogation was custodial is "whether a reasonable person in the suspect's position would believe that he had been taken into custody or otherwise deprived of his freedom of action in any significant way," or whether the suspect felt free to leave. *Davis*, 305 N.C. at 410, 290 S.E.2d at 581. This is an objective test, based upon a reasonable person standard, and is "to be applied on a case-by-case basis considering all the facts and circumstances." *State v. Medlin*, 333 N.C. 280, 291, 426 S.E.2d 402, 407 (1993). A reviewing court may not rely upon the subjective intent of the police (that the suspect would or would not be detained or arrested after questioning) or the subjective belief of the defendant as to his freedom to leave. *See id.*

Thus, we must examine the record as a whole and, applying the reasonable person standard set out above, determine as a matter of law whether defendant was in custody.

First, the record indicates, and defendant concedes, that defendant voluntarily accompanied the detectives to the police station. The detectives "asked [defendant] would he come back to the police department and talk . . . about a robbery." Although, as defendant argues, there was no indication that he was free to refuse the request, likewise there was no indication that he was *not* free to refuse the request.

Second, although the detectives never specifically indicated to defendant that he was not under arrest, they did advise him that "he didn't have to stay there, just that [they] needed him to talk to [them]." Defendant argues in his brief that "[a] reasonable person would perceive what the detective said to mean that . . . defendant could leave only *after* the interrogation." This seems to be adding to an unambiguous statement, and there is no evidence in the record tending to lead a reasonable person to draw such a conclusion. It appears that defendant was free to leave at any time he desired. Our Supreme Court has stated with regard to the ability of a suspect to

leave an interrogation, "*Miranda*'s commandment that questioning cease when a suspect indicates he intends to exercise his Fifth Amendment privilege does not apply . . . in situations such as this where the defendant has available the easier and more effective method of invoking the privilege simply by leaving." *Davis*, 305 N.C. at 418, 290 S.E.2d at 585; *see also State v. Greene*, 332 N.C. 565, 580, 422 S.E.2d 730, 739 (1992) ("By exercising his freedom to leave, the defendant could have terminated these allegedly coercive influences.").

Third, the detectives presented to defendant a statement made by a witness implicating defendant in the robbery. Defendant asserts that by confronting him with this evidence of involvement, a reasonable person in defendant's position would not have felt free to leave. The United States Supreme Court has stated, "[e]ven a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest." *Stansbury*, 511 U.S. at 327, 128 L. Ed. 2d at 300.

Fourth, defendant states in support of his argument to suppress that he "was interrogated in a coercive, police-dominated atmosphere." Undoubtedly, any time a police officer interviews a suspect, there will be present coercive aspects. *See State v. Gaines*, 345 N.C. 647, 662, 483 S.E.2d 396, 405, *cert. denied*, 118 S. Ct. 248, 139 L. Ed. 2d 177 (1997). The United States Supreme Court has stated:

> Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was *that* sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited.

*Mathiason*, 429 U.S. at 495, 50 L. Ed. 2d at 719; *see also Minnesota v. Murphy*, 465 U.S. 420, 79 L. Ed. 2d 409, *reh'g denied*, 465 U.S. 420, 79 L. Ed. 2d 409 (1984).

Other evidence in the record shows that defendant was under constant police supervision during the interrogation and that the interrogation lasted between one and two hours. Defendant was alert and sober. He was not restrained in any way, the door to the interrogation room was left open, and there were no threats or shows of violence or promises for leniency. There is no evidence that defendant was offered food or drink, nor is there evidence that he requested food or drink and was refused. During the interview, defendant gave several statements, from which a detective took notes and transcribed. Following the interview the detective went over the contents of the statement with defendant, defendant was given the opportunity to read the statement, and then defendant signed the statement. Although this may be a close case, we agree with the trial court and conclude that there is sufficient evidence in the record to find that defendant was not in custody at the time he confessed to the robbery.

[3] Defendant finally argues that he was certainly in custody after he confessed to the robbery, and thus the written statement (signed after his oral confession) should have been suppressed. The record shows that immediately after making the inculpatory statement, of which the detective had transcribed in his own words, defendant signed the statement affirming its truth and accuracy. The act of signing the statement merely finalized the confession. It was not, as defendant argues, "another un-*Mirandized* statement" subject to suppression.

Examining the evidence and giving appropriate deference to the trial court's findings, we conclude the defendant was not in custody and the trial court did not err in denying defendant's motion to suppress his 8 January 1997 statement.

### III.

[4] As his last assignment of error, defendant argues that the trial court erred in allowing a statement he made on 14 January 1997 to come into evidence. The statement in dispute was made following defendant's arrest for the Firehouse robbery. Detectives took defendant from jail in handcuffs and chains to the police department in order to talk with him about other robberies for which he was a suspect. Defendant was advised of his *Miranda* rights, signed a waiver of those rights, and made oral statements implicating himself in several robberies. During the interrogation, defendant made mention of the Firehouse robbery, stating that he had not received any money from "that one." It is this statement that is at issue. Defendant asserts that "[t]he statement was inadmissible because it was taken without coun-

sel present and not initiated by defendant, and was thus taken in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 23 of the North Carolina Constitution."

The Sixth Amendment provides that in all criminal prosecutions, the defendant has a right to the assistance of counsel. This right applies at all critical stages of a criminal prosecution (i.e. after formal charges have been filed). *See Massiah v. United States,* 377 U.S. 201, 12 L. Ed. 2d 246 (1964). This right, however, is "offense specific." *McNeil v. Wisconsin,* 501 U.S. 171, 175, 115 L. Ed. 2d 158, 166 (1991). Therefore, even if a defendant invokes his Sixth Amendment right to counsel in one case, officers may still interrogate him in regard to other offenses. *See State v. Pope,* 333 N.C. 106, 113, 423 S.E.2d 740, 744 (1992). This Court has stated,

> invocation of the right to counsel under the Sixth Amendment acts only to prevent subsequent interrogation of a defendant on the *same offense* for which he has invoked his right to counsel. However, it does not work to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached. As a result, under the rule in *McNeil,* any subsequent waiver of the right to counsel during a police-initiated interrogation is invalid *only* as to questioning on the *same offense* for which judicial proceedings have begun and for which the defendant has asserted his right to counsel.

*State v. Harris,* 111 N.C. App. 58, 65, 431 S.E.2d 792, 796-97 (1993). In this case, defendant had asserted his Sixth Amendment right to counsel for the Firehouse robbery, so any subsequent questioning about that offense outside the presence of defendant's attorney would not have been proper. Questioning about the other offenses, however, was not accorded the same protection and was permissible. Defendant was read his *Miranda* rights, signed a waiver, and made inculpatory statements on his own free will. Therefore, the police-initiated interrogation on 14 January 1997 was not violative of defendant's Sixth Amendment rights.

Nonetheless, defendant maintains that the statement regarding the Firehouse robbery (a charge for which defendant *had* asserted his Sixth Amendment right to counsel) should have been suppressed. Defendant argues that because he made a statement regarding the Firehouse robbery, the interrogation "concerned the pending charges." This argument is without merit. The record indicates that

the detectives were questioning defendant about *other* robberies in which he might have been involved. They never solicited any information regarding the Firehouse robbery. While defendant was discussing other robberies, he volunteered an inculpatory statement regarding the Firehouse robbery. This statement was unsolicited and spontaneous. *See Kuhlmann v. Wilson,* 477 U.S. 436, 91 L. Ed. 2d 364 (1986) (finding no Sixth Amendment violation where defendant was never asked about the pending charges, but nonetheless offered spontaneous and unsolicited statements in that regard).

Defendants claims are without merit. Thus, we affirm the rulings of the trial court.

No Error.

Judge WALKER files a separate concurring opinion.

Judge GREENE dissents.

Judge WALKER concurring.

I concur in the majority opinion that there is a presumption of validity of the indictment. Since defendant did not overcome this presumption by presenting any evidence to the contrary, I find it unnecessary to state "this holding is without prejudice to defendant's right to file a motion with the trial court regarding the validity of the bill of indictment."

Judge GREENE dissenting.

I believe Bill Edward Hall (Defendant) was in custody on 8 January 1997 at the time he gave his statement, and the trial court erred in denying Defendant's motion to suppress that statement.

Defendant was approached at a friend's house by two officers and was extended an unsolicited invitation to accompany the officers to the police department to talk about a robbery. Defendant agreed to go to the police station and was driven there in a police vehicle. Upon arrival at the police station, he was escorted by the two officers through the main police department, through a small door to the Detective Bureau, up a flight of stairs, through a room, down a hallway, to the left down another hallway, and finally into an interview room. Though the door to the interview room remained open, Defendant was under direct police supervision at all times during an

approximately two-hour period of questioning by the two police officers. There is no evidence that Defendant was offered any food and/or water or the use of a bathroom during the two-hour session. At the end of the session, Defendant offered the statement that is the subject of his motion to suppress.

Under these circumstances, a reasonable person would believe that he had been taken into custody and was not free to leave. *See State v. Davis*, 305 N.C. 400, 410, 290 S.E.2d 574, 580-81 (1982) (person is "in custody" for purposes of *Miranda* if a reasonable person would believe that he was not free to leave). Defendant, therefore, was "in custody," and was entitled to be advised of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 467-72, 16 L. Ed. 2d 694, 720-22, *reh'g denied sub nom. California v. Stewart*, 385 U.S. 890, 17 L. Ed. 2d 121 (1966). Defendant, in this case, was not advised of his *Miranda* rights prior to the taking of his statement, and it, therefore, must be suppressed. I do not believe a different result is required simply because the officers told Defendant he did not have to stay at the police station. That statement was made in a context that would lead a reasonable person to believe that he was free to leave *only* after Defendant agreed to talk to the police about the robbery they were investigating.

My review of the evidence in this case convinces me that the error was not harmless. Indeed, the State does not even make an argument in its brief to this Court that the admission of the 8 January 1997 statement, if error, was harmless. Once Defendant's 8 January 1997 statement is removed from the evidence, there are only two other pieces of evidence that even suggest that Defendant was involved in the Fish House robbery: (1) the statement of Natasha Jones wherein "she implicate[d]" Defendant in the Fish House robbery; and (2) Defendant's 14 January 1997 statement wherein he "stated that at the Fish House [robbery] Sherome [Wellman] got all the money. Natasha [Jones] and him have not gotten anything from that one." Although these statements *could* support an inference that Defendant committed the Fish House robbery, the State did not meet its burden of showing through overwhelming evidence that the constitutional error of admitting the 8 January 1997 statement was harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1997); *see also State v. Autry*, 321 N.C. 392, 399-400, 364 S.E.2d 341, 346 (1988) (presence of overwhelming evidence of guilt may render a constitutional error harmless). The State's evidence in this case is hardly overwhelming.

GASTON COUNTY DYEING MACH. CO. v. NORTHFIELD INS. CO.

[131 N.C. App. 438 (1998)]

I therefore would hold that Defendant is entitled to a new trial.