STATE OF NORTH CAROLINA v. ANTHONY BRIGGS

No. COA99-365

(Filed 21 March 2000)

1. **Confessions and Incriminating Statements— Miranda warnings—not in custody**

    Even though the State concedes defendant made his incriminating statements during an interrogation, the trial court did not err in an extortion case by denying defendant's motion to suppress his incriminating statements to a correction unit manager and an assistant superintendent for operations at a correction institute because: (1) an inmate is not automatically in custody for the purposes of Miranda because of his incarceration; and (2) defendant was free to not talk and to return to his cell at any time.

2. **Sentencing— habitual felon—indictment—underlying felony—notice**

    An habitual felony indictment which alleged that defendant had been convicted of three felonies, including "the felony of breaking and entering buildings in violation of N.C.G.S. [§] 14-54," provided defendant with adequate notice of the underlying felonies even though a defendant may be charged with either felony or misdemeanor breaking or entering under § 14-54, and the indictment failed to allege the particular felony defendant intended to commit pursuant to the breaking and entering, since the indictment clearly stated defendant had been convicted of the felony of breaking and entering, and the indictment contained the date the felony was committed, the court in which defendant was convicted, the number assigned to the case, and the date of the conviction.

STATE v. BRIGGS

[137 N.C. App. 125 (2000)]

Appeal by defendant from judgment dated 7 May 1998 by Judge Robert L. Farmer in Wake County Superior Court. Heard in the Court of Appeals 15 February 2000.

*Attorney General Michael F. Easley, by Associate Attorney General Christopher W. Brooks, for the State.*

*The Kelly Law Firm, by George E. Kelly, III, for defendant-appellant.*

GREENE, Judge.

Anthony Briggs (Defendant) appeals jury verdicts finding him guilty of extortion and of being an habitual felon.

Prior to trial, Defendant filed a motion to suppress allegedly incriminating statements he made to Renoice Stancil (Stancil), a correction unit manager at Eastern Correction Institute (Eastern), and Milton Nowell, Jr. (Nowell), the assistant superintendent for operations at Eastern. The motion was based on the ground the statements "were made in response to officer interrogation, while in custody, without waiver of Miranda rights." The State conceded before the trial court that the statements were made during an "interrogation"; however, the State argued the officers were not required to provide Defendant with his Miranda rights because the interrogation was not custodial.

At the suppression hearing, Stancil testified that in June of 1996 he was working at Eastern and was in charge of the "segregation lockup" unit. Stancil testified an inmate would be placed in segregation lockup pending any investigation of a rule violation. An inmate in segregation lockup would remain in his cell and, if that inmate left his cell for any reason, he would be placed in restraints consisting of waist chains and handcuffs and would be escorted by a prison officer.

Stancil testified that in June of 1996, he received information Defendant, an inmate at Eastern, had written a threatening letter to Hazel Scarboro (Scarboro), a woman residing in Wake County. Defendant was placed in segregation lockup pending investigation of the incident and, on 21 June 1996, Nowell and Stancil met in Stancil's office and "had [Defendant] brought to [Stancil's] office and questioned him in regards to that letter." Defendant was escorted from his cell to Stancil's office by an officer, and he wore waist chains and handcuffs. Stancil testified Defendant was "required" to come to his office.

Once inside Stancil's office, Defendant was questioned regarding the letter and he told Stancil and Nowell he did not write it. He then "got up to . . . exit the office." Stancil stated that when Defendant reached the door, Defendant "stopped and he closed the door [and] [a]fter he closed the door . . . he sit [sic] back down and that's when he began to state that he did write the letter to . . . Scarboro." Defendant explained why he wrote the letter, and then "he just got up and left." Stancil advised an officer, who was standing outside of Stancil's office, that Defendant was leaving his office. When Defendant stepped outside of the office, the officer escorted him back to his cell. Stancil and Nowell did not, at any time, read Defendant his Miranda rights.

Nowell testified at the suppression hearing that in June of 1996, Defendant had been placed in "administrative segregation" pending the investigation of the letter. When Defendant was brought into Stancil's office on 21 June 1996, he was "free not to talk" and to return back to his cell; however, he would have to be escorted back to his cell by an officer. Nowell stated that when Defendant denied writing the letter, Nowell told him "we are going to process this investigation anyway and it is my opinion that you wrote the letter[] and we are going to proceed with our administrative remedies anyway." Defendant then stood up and said, "I don't have anything else to say," and Nowell responded, "[o]kay, we are going to go ahead anyway." Defendant then began to leave the office; however, when he reached the doorway he asked if he could close the door. After Nowell responded that the door could be closed, Defendant "closed the door and sat back down and continued to explain about the letter[]." After he had finished explaining, he exited and "Stancil called for an officer to escort him back [to his cell]."

At the close of the hearing, the trial court orally denied Defendant's motion to suppress his confession. In the written order, dated 17 December 1998, the trial court made findings of fact consistent with the above stated facts. The trial court then denied Defendant's motion to suppress his confession, concluding as a matter of law Defendant's statements "were not obtained as a result of any custodial interrogation."

At trial, Stancil and Nowell testified, over Defendant's objection, regarding the statements made by Defendant on 21 June 1996.

At the close of trial, the jury found Defendant guilty of extortion, and the trial court proceeded to conduct a hearing on the habitual

felon indictment. Defendant moved to dismiss the habitual felon indictment on the ground it "does not charge habitual felon." The indictment for habitual felon stated Defendant had previously been convicted of three felonies, and contained, in pertinent part, the following language:

> 1. On February 14, 1975 in Guilford County . . . [D]efendant committed against the State of North Carolina the felony of breaking and entering buildings in violation of N.C.G.S. [§] 14-54 and was thereafter charged and pled guilty and judgment was entered in Guilford [C]ounty Superior Court on April 15, 1975 [75 CR 27351][.]

Defendant argued the indictment, based on this language, contained a previous misdemeanor rather than felony conviction. The trial court denied Defendant's motion to dismiss the indictment, and the jury found Defendant guilty of being an habitual felon.

The issues are whether: (I) Defendant was in custody, for the purposes of *Miranda*, when he confessed to writing the letter; and (II) a conviction for "the felony of breaking and entering buildings in violation of N.C.G.S. [§] 14-54" is a felony conviction for the purpose of an habitual felon indictment.

I

[1] Defendant argues his statements to Nowell and Stancil were made during a custodial interrogation and, because Defendant was not read his Miranda rights, those statements were unconstitutionally obtained. We disagree.

"The trial court's findings of fact after a *voir dire* hearing concerning the admissibility of [a] confession are conclusive and binding on the appellate courts when supported by competent evidence." *State v. Davis*, 305 N.C. 400, 410, 290 S.E.2d 574, 581 (1982). The determination of whether a defendant was in custody, based on those findings of fact, however, is a question of law and is fully reviewable by this Court. *State v. Hall*, 131 N.C. App. 427, 431, 508 S.E.2d 8, 12 (1998).

In this case, Defendant does not contend the trial court's findings of fact are unsupported by competent evidence; therefore, the sole issue before this Court is whether the findings of fact support the trial court's conclusion of law that Defendant's confession to writing the threatening letter was "not obtained as a result of any custodial inter-

rogation." *See Schloss v. Jamison,* 258 N.C. 271, 275, 128 S.E.2d 590, 593 (1962). Additionally, because the state conceded to the trial court that the 21 June 1996 meeting was an "interrogation," we need only address whether the interrogation was "custodial" for purposes of *Miranda.*

"A person is in custody, for purposes of *Miranda,* when he is 'taken into custody or otherwise deprived of his freedom of action in any significant way,' " *Hall,* 131 N.C. App. at 431, 508 S.E.2d at 12 (quoting *Miranda v. Arizona,* 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706 (1966)), and an inmate who is subject to a custodial interrogation is entitled to Miranda warnings, *Mathis v. United States,* 391 U.S. 1, 4-5, 20 L. Ed. 2d 381, 385 (1968). An inmate, however, is not, because of his incarceration, automatically in custody for the purposes of *Miranda*; rather, whether an inmate is in custody must be determined by considering his freedom to depart from the place of his interrogation. *See United States v. Conley,* 779 F.2d 970, 973 (4th Cir. 1985), *cert. denied,* 479 U.S. 830, 93 L. Ed. 2d 61 (1986). We recognize, however, that an inmate inherently has some restriction on his freedom of movement, and factors to consider when determining whether an inmate is free to depart from the place of his interrogation include whether: the inmate was free to refuse to go to the place of the interrogation, the inmate was told that participation in the interrogation was voluntary and that he was free to leave at any time, the inmate was physically restrained from leaving the place of interrogation, and the inmate was free to refuse to answer questions.

In this case, Defendant, who had been placed in segregation lockup pending investigation of the letter, was escorted to Stancil's office in waist restraints and handcuffs. Stancil testified Defendant was "required" to come to his office, and the restraints and handcuffs remained on Defendant while he was in Stancil's office. Defendant, nevertheless, remained "free not to talk" and to return to his cell. Indeed, Defendant did terminate the questioning at one point by stating he "[did not] have anything else to say." Defendant then proceeded to walk to the doorway, and he was not restrained from attempting to leave the room. Because Defendant was free to leave Stancil's office and return to his cell at any time, Defendant was not in custody for the purposes of *Miranda.* The trial court, therefore, properly denied Defendant's motion to suppress his confession.[1]

---

1. A confession must also be given voluntarily in order to be admissible. *State v. Wiggins,* 334 N.C. 18, 28, 431 S.E.2d 755, 761 (1993). In this case, Defendant did not contend before the trial court and does not argue in his brief to this Court that his

II

**[2]** An habitual felon is "[a]ny person who has been convicted of or pled guilty to three felony offenses in any federal court or state court in the United States." N.C.G.S. § 14-7.1 (1999).

> An indictment which charges a person with being an habitual felon must set forth the date that prior felony offenses were committed, the name of the state or other sovereign against whom said felony offenses were committed, the dates that pleas of guilty were entered to or convictions returned in said felony offenses, and the identity of the court wherein said pleas or convictions took place.

N.C.G.S. § 14-7.3 (1999).

In this case, the habitual felon indictment stated Defendant had previously been convicted of three felonies, including, in pertinent part, "the felony of breaking and entering buildings in violation of N.C.G.S. [§] 14-54." Section 14-54(a) provides "[a]ny person who breaks or enters any building with intent to commit any felony or larceny therein shall be punished as a Class H felon," and section 14-54(b) provides "[a]ny person who wrongfully breaks or enters any building is guilty of a Class 1 misdemeanor." N.C.G.S. § 14-54(a), (b) (1999).

Defendant contends the indictment for habitual felon did not set forth the statutorily required information regarding three felonies because "[t]o allege a felonious [b]reaking and [e]ntering [rather than a misdemeanor breaking and entering], the indictment would have to allege commission of breaking and entering with intent to commit some felony" pursuant to *State v. Vick*, 70 N.C. App. 338, 319 S.E.2d 327 (1984) (holding "an indictment charging the offense of felonious breaking or entering is sufficient only if it alleges the particular felony which is intended to be committed").

The purpose of an habitual felon indictment is to provide a defendant "with sufficient notice that he is being tried as a recidivist to enable him to prepare an adequate defense to that charge," and not to provide the defendant with an opportunity to defend himself against the underlying felonies. *State v. Cheek*, 339 N.C. 725, 729, 453 S.E.2d 862, 864 (1995). In this case, the habitual felon indictment provided Defendant with notice he was being tried as a recidivist, and

statements were involuntarily given, and we, therefore, do not address this issue. *See* N.C.R. App. P. 10(a).

one of the underlying felonies was "the felony of breaking and entering buildings in violation of N.C.G.S. [§] 14-54." Although a defendant may be charged with either felony or misdemeanor breaking and entering under section 14-54, the indictment in this case clearly stated Defendant had been convicted of *felony* breaking and entering. Moreover, the indictment contained the date the felony was committed, the court in which Defendant was convicted, the number assigned to the case, and the date of the conviction. The indictment, therefore, provided Defendant with adequate notice of the underlying felony. *Vick* is distinguishable from this case because in *Vick* the indictment charged the defendant with the crime of felonious breaking and entering, and the indictment failed to state the underlying felony. *Vick*, 70 N.C. App. at 339, 319 S.E.2d at 328. In this case, however, Defendant has been charged with being an habitual felon, and an indictment for habitual felon is sufficient if it provides a defendant with notice of his prior felony convictions. Accordingly, the trial court did not err by denying Defendant's motion to dismiss the habitual felon charge.

No error.

Judges WALKER and TIMMONS-GOODSON concur.