STEELMAN, Judge.
Defendant, Christopher Wayne Alford, appeals convictions for possession of marijuana within a penal institution and possession of drug paraphernalia. For the reasons discussed herein, we reverse both convictions.
The State's evidence tended to show that on 14 July 1996, Correctional Sergeant Steve McCartney of Lumberton Correctional Institution, had information that defendant, an inmate of the prison, was bringing drugs into the facility following visitation. After a visitation, McCartney took defendant into an area and ordered defendant to unbutton his pants. When defendant's pants fell to the floor marijuana and drug paraphernalia (a brown paper roll used to contain and conceal the marijuana) fell to the ground. McCartney also found a hole in defendant's pocket and petroleum jelly. Correctional Officer Shawn Graham observed the search.
Defendant was then taken to a single cell segregation unit where he was visited by Sergeant James McCray, an investigating officer for the Department of Corrections. McCray advised defendant of his inmate disciplinary infraction rights. These rights did not contain Miranda warnings, and McCray did not otherwise advise defendant of his Miranda warnings.
The following day, McCray had a conversation with defendant in which he asked if defendant wished to a make a statement. McCray gave defendant a form on which to write a statement and left to attend to other duties. When McCray came back the defendant handed him the form through a trap door. The State's evidence tends to show that defendant made a written statement on the paper confessing to the crime. Defendant testified that he refused to make a statement and instead signed the blank sheet of paper.
At trial, defendant made a motion to suppress the written statement. The trial judge concluded that the defendant provided officers with the written statement, that the defendant voluntarily chose to do so after he was clearly given the option to make a statement or not, and that Miranda warnings were neither given, nor required to be given, in this case. The motion to suppress the statement was denied. Defendant was convicted on both counts by a jury, and appeals. In his first assignment of error, defendant contends that the trial court erred in denying his motion to suppress his statement to Officer McCray. We agree.
Upon appellate review of the trial court's ruling on a motion to suppress, the findings of fact are conclusive if supported by competent evidence. State v. Buchanan, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001). In this case, defendant did not assign as error any of the trial court's findings of fact, and they are therefore binding on the appeal of this matter. State v. Watkins, 337 N.C. 437, 446 S.E.2d 67 (1994). However, the trial court's determination of whether a defendant was "in custody" for purposes of Miranda is a question of law, fully reviewable on appeal. State v. Crudup, 157 N.C. App. 657, 659, 580 S.E.2d 21, 23 (2003). Further, the determination of whether an interrogation was conducted for purposes of Miranda is also fully reviewable on appeal. Id. Thus, the issues of custody and interrogation are reviewed de novo.
In this matter, the trial court made the following conclusions of law:
Miranda warnings are required in pretrial custodial interrogations. In this case, the defendant was lawfully in custody post-trial after his convictions and subject to the rules and regulations of the North Carolina Department of Corrections. He was advised about his rights in this matter pursuant to State's Exhibit Number 1 and voluntarily elected to make a statement. Formal Miranda Warnings were not required in this case.
Defendant asserts that his statement was the product of a custodial interrogation, and should have been suppressed. Custodialinterrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." State v. Clay, 297 N.C. 555, 559, 256 S.E.2d 176, 180 (1979), overruled on other grounds (quoting Miranda, 384 U.S. at 444, 16 L. Ed. 2d at 706).
It is not clear from the trial court's conclusions of law whether it found defendant was in custody for the purposes of Miranda. "An inmate, however, is not, because of his incarceration, automatically in custody for the purposes of Miranda; rather, whether an inmate is in custody must be determined by considering his freedom to depart from the place of his interrogation." State v. Briggs, 137 N.C. App. 125, 129, 526 S.E.2d 678, 680 (2000) (finding Defendant was not in custody because he was free to leave the place of interrogation and return to his cell at any time). In the instant case defendant was placed in solitary confinement pending investigation as a direct result of the contraband found. He was of course not free to leave this cell. We find on these facts that defendant was in custody for purposes of Miranda.
We must next determine whether an interrogation took place.
The term "interrogation" is not limited to express questioning by law enforcement officers, but also includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." The focus of the definition is on the suspect's perceptions, rather than on the intent of the law enforcement officer, because Miranda protects suspects from police coercion regardless ofthe intent of police officers. However, because "the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response."
State v. Golphin, 352 N.C. 364, 406, 533 S.E.2d 168, 199 (2000)(emphasis added)(citations omitted). Factors that are relevant to the determination of whether police "should have known" their conduct was likely to elicit an incriminating response include: (1) "the intent of the police"; (2) whether the "practice is designed to elicit an incriminating response from the accused"; and (3) "any knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion . . . ." State v. Fisher, 158 N.C. App. 133, 142-43, 580 S.E.2d 405, 413 (2003) (quoting Rhode Island v. Innis, 446 U.S. 291, 302, 64 L. Ed. 2d 297, 308 (1980)).
In State v. Stokes, 150 N.C. App. 211, 565 S.E.2d 196 (2002) (overruled in part on other grounds, 357 N.C. 220, 581 S.E.2d 51 (2003)), a police officer unexpectedly arrived at Defendant's cell and the Defendant asked the officer what he wanted. The police officer responded with the word "How?" Defendant then confessed. This Court found this to be an interrogation. Id. "We find that Officer Varner interrogated defendant because the question `How?' is the type of question that necessarily invites a response. The officer's question was designed for the purpose of eliciting a response he knew or should have known was reasonably likely to beincriminating." Id. at 222, 565 S.E.2d at 204, see also State v. Phelps, 156 N.C. App. 119, 123, 575 S.E.2d 818, 821 (2003) reversed on other grounds by 358 N.C. 142, 592 S.E.2d 687 (2004)(finding an interrogation where the police officer's objective purpose was to obtain defendant's admission or denial of the possession of contraband).
In this case, Officer McCray talked with the defendant on 14 July 1996 concerning the drugs and paraphernalia found following defendant's visitation. He advised defendant of his rights under the Department of Corrections disciplinary procedures. One of these rights was to make a verbal or written statement to the investigating officer. The next day, 15 July 1996, Officer McCray went to the defendant's cell where he was being held in solitary confinement due to the incident with the drugs. McCray testified that he went to defendant's cell with the purpose of finding out what took place. He spoke with defendant for 30-45 minutes and asked defendant if he wished to make a statement. Upon receiving a positive response, McCray gave defendant a form captioned "Statement by Witness" and left the defendant in his cell. Later that day McCray returned and picked up the statement from the defendant.
We hold that this did constitute an interrogation. Since defendant was in custody, this was a custodial interrogation requiring Miranda warnings. Under Miranda the defendant must be advised:
(1) that he has a right to remain silent;
(2) that anything he says can and will be used against him in court;
(3) that he has a right to consult with a lawyer and to have a lawyer with him during interrogation; and
(4) that if he is an indigent a lawyer will be appointed to represent him. . . .
State v. Holcomb, 295 N.C. 608, 611, 247 S.E.2d 888, 890 (1978). The Department of Corrections rights given to the defendant on 14 July 1996 did not contain any of the above-enumerated rights required under Miranda. It was thus error for the trial court to deny defendant's motion to suppress his confession.
The State contends that if defendant's statement should have been suppressed that any such error was not prejudicial. We disagree.
N.C. Gen. Stat. § 15A-1443(b) (2004) provides: "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless."
"The fact that, exclusive of the erroneously admitted evidence, there was plenary evidence to support the verdict is not determinative. The test is whether, in the setting of this case, we can declare a belief that the erroneously admitted evidence was harmless beyond a reasonable doubt, that is, that there is no reasonable possibility the admission thereof might have contributed to the conviction." State v. Castor, 285 N.C. 286, 292, 204 S.E. 2d848, 853 (1974) (emphasis added) . Our Supreme Court has said: "Ordinarily, where a confession made by the defendant is erroneously admitted into evidence, we cannot say beyond a reasonable doubt that the erroneous admission of the confession did not materially affect the result of the trial to the prejudice of the defendant." State v. Siler, 292 N.C. 543, 552, 234 S.E.2d 733, 739 (1977).
This issue was recently addressed in the case of State v. Phelps, 156 N.C. App. 119, 575 S.E.2d 818 (2003) reversed by, 358 N.C. 142, 592 S.E.2d 687 (2004). In that case, the Court of Appeals affirmed the trial court, holding that the admission of a confession obtained in violation of defendant's Miranda rights was harmless beyond a reasonable doubt. Our Supreme Court reversed the Court of Appeals, and adopted Judge Hunter's dissent, which held: "without the admission of defendant's incriminating statement, there is a reasonable possibility that the jury would have had reasonable doubt as to whether defendant knowingly possessed the cocaine and returned a different verdict." Phelps, 156 N.C. App. at 127-28, 575 S.E.2d at 824.
In the instant case, there was conflicting evidence as to whether the defendant was in a area by himself or in an area with a large number of other inmates at the time the drugs and paraphernalia were found. Neither of the officers actually saw the drugs or paraphernalia in the possession of the defendant, but rather found the drugs and paraphernalia on the floor after defendant had dropped his pants. Defendant's confession clearlyeliminated any doubt that the jury might have had of defendant's guilt.
It is the burden of the State to demonstrate that the admission of the confession was harmless beyond a reasonable doubt. We hold that the State has failed to meet this burden. Defendant's confession should have been suppressed. Defendant's convictions are vacated and these matters are remanded to the Superior Court of Robeson County for a new trial.
NEW TRIAL.
Judges McGEE and CALABRIA concur.
Report per Rule 30(e).