STEPHENS, Judge.
Factual Background and Procedural History
In 2012, Pamela Love Alexander and her son, Eric Brooks, took Defendant Kevin Levi Davis in and allowed him to live at their home in Weaverville, North Carolina. Davis lived off and on in the home with Alexander and Brooks until he moved out a week or two before 29 January 2013. On 29 January 2013, Brooks discovered several items missing from the home and reported a break-in and theft to the Buncombe County Sheriff's Department. The stolen items included two TVs, several video game systems (Wii, Xbox 360, and PS3) and games, a Blu-ray player, three personal computers, a guitar, two swords, and a Roku entertainment system.
Brooks told several of his friends about the theft, and eventually one informed him that he saw a personal computer belonging to Alexander and Brooks in Davis's possession. On 6 February 2013, Brooks informed Detective David Flanagan of the Buncombe County Sheriff's Department that he suspected Davis of committing the theft and that Davis might be living with his girlfriend, Hannah Pines-Schwartz ("Schwartz"), on the campus of the University of North Carolina at Asheville ("UNC-A"). That same day, Detective Flanagan contacted Officer Jeff Ramsey of the UNC-A Police Department and asked for his help in locating Schwartz and Davis.
Through a school record search, Officer Ramsey found that Schwartz was living in a dorm room on campus, and that she was the only person assigned to that room. Later on 6 February 2013, Officer Ramsey went to Schwartz's dorm to investigate and came upon a man smoking a cigarette outside, who fit Detective Flanagan's description of Davis. The man confirmed that he was Davis when asked to identify himself, and then showed his driver's license to Officer Ramsey. Officer Ramsey explained that he was investigating whether Davis was staying in the dorm as an unregistered guest and also told Davis about the larceny allegations. When Officer Ramsey asked if they could go inside the dorm to talk, Davis agreed. As they walked toward the dorm, Schwartz met Officer Ramsey and Davis at the doorway of the dorm. The three proceeded inside and found a place to talk in a room with a vending machine. This room was roughly 8 by 12 feet and had one doorway that did not have a door on it.
Officer John Littrell of the UNC-A Police Department joined Officer Ramsey, Davis, and Schwartz soon after they entered the dorm. During the time in the room with the vending machine, Officers Ramsey and Littrell did not physically restrain Davis or restrict him from leaving the room. Officer Ramsey explained to Schwartz why he was there and Schwartz consented to a search of her dorm room when asked by Officer Ramsey. Officer Littrell left for two minutes to retrieve a consent-to-search form and Schwartz signed it when he returned. Once Schwartz signed the consent form, Officer Ramsey asked, and Schwartz agreed, to go to Schwartz's room on the fourth floor of the dorm. After eight to ten minutes in the room with the vending machine, Officer Ramsey, Officer Littrell, and Schwartz went up to Schwartz's room. Without being asked, Davis followed the group without any comment.
When the group arrived at the dorm room, the officers propped open the door and asked Davis to pile his belongings on the bed, which he did with no objection. While he gathered his property on the bed, Davis was moving around the room, retrieving his property, and sitting down; Davis was not handcuffed, physically restrained, or told he could not leave the room. The items Davis piled on the bed included items similar to the stolen property, such as a guitar, two swords, two computers, one video game system (but not the Wii), and several bags of clothes.
After 15 minutes in the dorm room, Detective Flanagan arrived as a result of a call to him from Officer Ramsey. Officer Ramsey met Detective Flanagan in the hallway outside the room and told Detective Flanagan about the consent form that Schwartz signed before he entered the dorm room. Detective Flanagan saw the property piled on the bed and told Davis he was not under arrest or in custody. He then asked Davis if he could speak to him about the property and Davis agreed. During his conversation with Davis, Detective Flanagan said that he knew the property on the bed was the property he was looking for, that he knew where it came from, and that Davis should be ashamed of himself. He then asked Davis to give a written statement concerning the stolen property. Davis agreed, and gave the following written statement to Detective Flanagan:
January 29, 2013. LJ McClain and I went to Eric Brooks' house around 11:30 AM, walked with in [sic] through the front door, put their dog in the kennel. LJ waited in the car until I had everything put at the door. A UPS guy came as we were getting ready to take stuff out. Took the big TV out first and [ ] put it and the swords in the back seat and everything else in the trunk. We left around 12:15 PM. I have/had one Asus computer, a couple swords, water pipe, other pipes, a guitar, a Blu-ray player, a game and that's all. LJ has the TV, Xbox 360 and mini laptop. Kyrean [ ] has the big TV, PS3 and laptop.
Once the written statement was given, Detective Flanagan told Davis that he would need to get in touch with him at a later date but did not plan on taking Davis into custody at that time. Officer Ramsey, who had left the dorm room to take a call, returned after learning there was an outstanding warrant for the arrest of Davis. He then handcuffed Davis, placed him under arrest, and took him to the Buncombe County Sheriff's Department. From the time that Officer Ramsey started talking to Davis until Davis was formally arrested on the outstanding warrant, officers never handcuffed him or physically restrained him by other means.
On 1 July 2013, Davis was indicted for breaking and entering, larceny after breaking and entering, and obtaining property by false pretenses. Prior to trial, on 29 January 2014, he filed a motion to suppress the written statement he made in Schwartz's dorm room, claiming that the police interrogated him in a custodial setting without affording him Mirandawarnings before soliciting his statement. Trial began in Buncombe County Superior Court on 3 February 2014 and, that day, the trial court denied Davis's motion to suppress based on its findings of fact that:
9. Until [Davis] was arrested on the outstanding warrant after providing his written statement, [Davis] was never in custody nor under arrest. [Davis's] movements were not restricted in any way and he was free to leave at any time....
....
11. Based on a totality of the circumstances a reasonable person in the position of [Davis] at the time he provided the written statement would not have believed that he was under arrest or was restrained in his movement to any significant degree.
Consequently, the trial court concluded as a matter of law that:
[A] reasonable person in the position of [Davis] at the time he provided the written statement would not have believed that he was under arrest or was restrained in his movement to any significant degree, and as a result [Davis's] constitutional rights were not violated in any respect when he freely and voluntarily provided his written statement to [D]etective Flanagan....
Davis also filed a motion to dismiss the obtaining property by false pretenses charge, which arose from his alleged theft and sale of a Wii video game system to a pawnshop called Cash Converters. At the end of the State's evidence and again at the close of all the evidence, Davis's attorney argued that the State's evidence was insufficient as a matter of law to establish each element of the offense because there was no testimony from any witness identifying Davis as the man who sold the Wii and there was no evidence the Wii was stolen. The owner of Cash Converters, Michael McFarling, testified that he could not remember Davis being the one who sold the Wii to his shop and there was no serial number on the Wii to link it with the theft, but a person with a North Carolina driver's license in the name of Kevin Levi Davis came into his store and sold a Wii on 1 February 2013 as evidenced by a receipt. Cash Converters requires all persons selling items to sign a statement that they are legally entitled to sell those items and, consequently, Cash Converters has a signature from a Kevin Davis that certified he owned the Wii and he was entitled to sell it. The trial court found that, based upon the evidence and testimony, there was sufficient evidence to submit the obtaining property by false pretenses charge to the jury and therefore denied the motion to dismiss the charge.
On 6 February 2014, the jury found Davis guilty of obtaining property by false pretenses, felonious breaking and entering, and felonious larceny. The trial court consolidated the breaking and entering and larceny charges and sentenced Davis to consecutive terms of six to seventeen months in prison for obtaining property by false pretenses and the consolidated charges. By and through his attorney, Davis filed written notice of appeal on 6 February 2014. On appeal, Davis argues that the trial court erred in denying his motion to suppress his written statement and in denying his motion to dismiss the charge of obtaining property by false pretenses.
Motion to Suppress
Davis first argues that the trial court erred in denying his motion to suppress the written statement he gave in Schwartz's dorm room because the statement was the product of an unlawful custodial interrogation. Specifically, Davis asserts that because he was always in the presence of armed officers who never informed him that he was free to leave or to deny their requests, a reasonable person would have objectively believed that his freedom of movement had been restrained to a degree associated with a formal arrest and that, consequently, he was entitled to be informed of his right against self-incrimination. We disagree.
Our Supreme Court has set out the appropriate standard of review of a trial court's denial of a motion to suppress, and it is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Cooke,306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citation omitted). "The trial court's conclusions of law are reviewed de novoand must be legally correct." State v. Campbell,188 N.C.App. 701, 704, 656 S.E.2d 721, 724 (citation and brackets omitted), appeal dismissed,362 N.C. 364, 664 S.E.2d 311 (2008).
In Miranda v. Arizona,the United States Supreme Court held that, under the Fifth Amendment, individuals subjected to custodial interrogation must be informed that they have "a right to remain silent, that any statement [they do] make may be used as evidence against [them], and that [they have] a right to the presence of an attorney, either retained or appointed." 384 U.S. 436, 444, 16 L.Ed.2d 694, 706-07 (1966). The Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id.at 444, 16 L.Ed.2d at 706.
In determining whether a suspect is in custody and entitled to Mirandawarnings, our Supreme Court has made clear that "an appellate court must examine all the circumstances surrounding the interrogation; but the definitive inquiry is whether there was a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest." State v. Gaines,345 N.C. 647, 662, 483 S.E.2d 396, 405, cert. denied,522 U.S. 900, 139 L.Ed.2d 177 (1997). In State v. Davis,our Supreme Court elaborated on the test for determining if a person is in custody, explaining
the reviewing court may rely upon neither the subjective intent of the police to restrain him nor the subjective belief of the defendant as to what the police would do if he attempted to leave. Instead, the reviewing court must determine whether the suspect was in custody based upon an objective test of whether a reasonable person in the suspect's position would believe that he had been taken into custody or otherwise deprived of his freedom of action in any significant way or, to the contrary, would believe that he was free to go at will.
305 N.C. 400, 410, 290 S.E.2d 574, 581 (1982) (citation omitted).
In State v. Hall,the defendant sought to suppress an incriminating statement he made to police officers after voluntarily accompanying officers to a police station to talk. 131 N.C.App. 427, 430, 508 S.E.2d 8, 11 (1998), affirmed per curiam,350 N.C. 303, 513 S.E.2d 561 (1999). During his time with the police, the defendant was never handcuffed, was never told he could refuse officer requests, and was constantly in the presence of armed officers. Idat 432-33, 508 S.E.2d at 12. To support his motion to suppress, the defendant claimed that, because he never had an opportunity to agree to go to the police station and he was in a police-dominated environment, he was in custody and had a right to Mirandawarnings. Id.This Court found that because the suspect was not restrained in any way, the door to the interrogation room remained open at all times, there was no indication that he was not free to refuse requests by the officers, and there was no evidence that officers denied requests by the defendant, he was not in custody and the officers did not owe him Mirandawarnings. See id.
In the present case, much like Hall,Davis agreed to talk with the officers, the doors to the rooms in which he spoke to the officers always remained open, he was never handcuffed or physically restrained prior to his arrest on the outstanding warrant, and the officers never refused any demands by Davis to leave their presence. Moreover, Davis agreed to give a statement after Detective Flanagan explicitly told him he was not under arrest or in custody, which, although not dispositive, is another factor our Supreme Court's prior holdings indicate weighs against a finding that custodial interrogation occurred. See, e.g., Gaines,345 N.C. at 662-63, 483 S.E.2d at 405 (finding no custodial interrogation where the defendant "was repeatedly told that he was not under arrest" before signing a written statement); see also State v. Lane,334 N.C. 148, 154-55, 431 S.E.2d 7, 10 (1993) (finding no custodial interrogation where the defendant "was told several times ... that he was free to leave and that he was not under arrest" but never asked to leave or requested an attorney before making an inculpatory statement).
Here, the trial court's underlying finding of fact that a reasonable person "would not have believed that he was under arrest or was restrained in his movement to any significant degree" is supported by competent evidence which in turn supports the trial court's conclusion of law that "[Davis's] constitutional rights were not violated in any respect when he freely and voluntarily provided his written statement to [D]etective Flanagan." We therefore hold the trial court did not err in denying Davis's motion to suppress.
Motion to Dismiss
Davis next argues that the trial court erred in denying his motion to dismiss the charge of obtaining property by false pretenses because the evidence supporting the charge was insufficient as a matter of law. We disagree.
"This Court reviews the trial court's denial of a motion to dismiss de novo." State v. Smith,186 N.C.App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "[T]he question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." State v. Powell,299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion." State v. Robinson,355 N.C. 320, 336, 561 S.E.2d 245, 255 (citation omitted), cert. denied,537 U.S. 1006, 154 L.Ed.2d 404 (2002). When evidence only arouses a suspicion of the fact to be proved, it is not substantial, even if the suspicion is strong. State v. Malloy,309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983). If the evidence "is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator, the motion to dismiss must be allowed." Id.However,
[t]he evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion.
Powell,299 N.C. at 99, 261 S.E.2d at 117.
To sustain an obtaining property by false pretenses charge, the State must present substantial evidence of each of the following elements:
(1) that the representation was made as alleged; (2) that property or something of value was obtained by reason of the representation; (3) that the representation was false; (4) that it was made with intent to defraud; [and] (5) that it actually did deceive and defraud the person to whom it was made.
State v. Estes,186 N.C.App. 364, 371, 651 S.E.2d 598, 603 (2007) (citation omitted), appeal dismissed and disc. review denied,362 N.C. 365, 661 S.E.2d 883 (2008).
In the present case, Davis argues that the evidence concerning the obtaining property by false pretenses charge against him aroused only a suspicion that he committed the crime, but the evidence was not substantial. Specifically, Davis claims that because no witness could identify him as the person who sold the Wii and there was no identifying information which supported the State's assertion that the Wii was stolen and did not belong to Davis, there is not substantial evidence that Davis made a false representation.
These arguments are unavailing. The evidence clearly demonstrates that a Wii was among the items stolen from the Alexander residence but was not with the other stolen items in Schwartz's dorm room. Furthermore, a person with Davis's driver's license came in to Cash Converters to sell a Wii, signed a statement that declared he could rightfully sell the Wii, and sold the Wii to the shop for $20. Less than one week later, Davis used his driver's license to confirm his identity when Officer Ramsey initially approached him. No evidence was offered that Davis rightfully owned the Wii or that anyone other than Davis possessed or used his driver's license during the relevant time frame.
On this record, considering the evidence in the light most favorable to the State, we conclude the evidence was sufficient for a reasonable juror to determine that it was Davis who made the representation of ownership of the Wii to the pawn shop, money was obtained from the pawn shop through Davis's representation, Davis's representation of ownership of the Wii was false, it was made with the intent to defraud the pawn shop, and that it did defraud the pawn shop of $20. We therefore hold that the trial court did not err in denying Davis's motion to dismiss the charge of obtaining property by false pretenses.
NO ERROR.
Judges BRYANT and DIETZ concur.
Report per Rule 30(e).
Opinion
Appeal by Defendant from judgments entered 6 February 2014 by Judge J. Thomas Davis in Buncombe County Superior Court. Heard in the Court of Appeals 19 May 2015.