State v. Baldwin

---

STATE OF NORTH CAROLINA v. GEORGE W. BALDWIN, JR.

No. 8215SC285

(Filed 16 November 1982)

1. **Criminal Law § 66.16— tainted photographic identification—independent origin of in-court identification**

Even though a pretrial photographic showing was unnecessarily suggestive, the in-court identification was of independent origin and still admissible since the victim looked into the defendant's face for three or four minutes, was very attentive, described the person who robbed him, did not waiver in his identification at trial, and where the length of time between the crime and the trial was about ten weeks.

2. **Arrest and Bail § 6— resisting arrest—relevancy of evidence**

   Testimony concerning defendant's abusive behavior and language while he was handcuffed was relevant to his resisting arrest charge. G.S. 14-223.

3. **Arrest and Bail §§ 6.1, 6.2— resisting arrest—jury charge—indictment as giving notice**

   It was not error to instruct the jury that defendant threatened the officers when he was charged with resisting arrest since there was no merit to defendant's argument that the indictment did not give him notice that the threats would be used against him. An indictment for resisting arrest must only include a general description of the defendant's actions, and that standard was met.

4. **Arrest and Bail § 6.2— resisting arrest—sufficiency of jury instructions**

   An instruction on resisting arrest was proper where the judge gave the jury the duty of determining if the evidence proved all the elements of the crime.

5. **Criminal Law § 114.2— instructions—summary of evidence—no error**

   There was no error in the trial judge's summary of the evidence where he did not label any of his summary as defendant's evidence since (1) the judge stated the evidence "to the extent necessary to explain the application of law to the evidence," G.S. 15A-1232, (2) the judge instructed on all material features of the case, and (3) even though the defendant presented no evidence, the trial judge stated facts favorable to him in summarizing the State's case.

APPEAL by defendant from *Battle, Judge.* Judgment entered 25 September 1981, in Superior Court, ORANGE County. Heard in the Court of Appeals 13 October 1982.

Defendant was indicted on charges of armed robbery, kidnapping, assault with a deadly weapon with intent to kill, and resisting arrest. He pled not guilty to all of the offenses.

The evidence tended to show that James Carlton was sitting in his parked car outside of a grocery store in Chapel Hill on the evening of 3 June 1981. About 10:00 p.m., a man approached the car and asked if Carlton had any drugs. When Carlton answered no, the man got into the car and eventually pulled out a gun. He ordered Carlton to drive several blocks where he took his wallet and made Carlton get out of the car. Carlton called the police and told them the facts, including a description of his car.

Officer Wayne Hoffman testified that he observed a car matching the description of the vehicle involved in the robbery shortly after it occurred. He followed it, turned on his siren and blue lights and informed other officers that he was in pursuit.

The man eventually ran off the road. He left the car and ran into a wooded area. When Lieutenant Wilbert Simmons arrived, Hoffman followed the man. After observing what looked like a gun pointed at him in the man's hand, Hoffman fired a warning shot. The man ran. Hoffman then heard a shot fired.

When he saw the man pointing a gun at him again, Hoffman fired another warning shot and told the man to freeze. The man, who Hoffman identified as the defendant, put down his gun and was arrested. According to Hoffman, the defendant struggled and used abusive language while being taken into custody and was intoxicated.

Hoffman found a .22 caliber pistol about 20 feet from the defendant with five of the six chambers loaded. He testified that in his opinion, the gun had been fired.

Simmons corroborated Hoffman's testimony about the defendant being abusive and uncooperative when arrested. He also stated that he heard three shots fired in the woods that Hoffman had followed the defendant into and observed that the second shot sounded like it was a lesser caliber than the other shots.

Carlton was told on the telephone that a suspect in the case had been taken into custody. He then went to the police station where he gave an oral statement and was shown some photographs. Carlton picked out two photographs that looked like the person who robbed him, one of which was a picture of the defendant. He was then told that he had picked a photograph of the man that had been arrested and a photograph of the defendant was pointed out to him. As he was leaving the station, Carlton saw defendant in the hall. At trial, he identified defendant as the person who robbed him.

A jury convicted defendant of armed robbery, assault with a deadly weapon and resisting arrest. From the convictions and sentences imposed, defendant appealed.

*Attorney General Rufus L. Edmisten, by Associate Attorney K. Michele Allison, for the State.*

*Appellate Defender Adam L. Stein, by Assistant Appellate Defender Marc D. Towler and James R. Glover, for the defendant.*

ARNOLD, Judge.

[1]  Defendant first attacks the refusal of the trial court to suppress the in-court identification of the defendant by Carlton. He argues that not only was the pretrial showing of photographs improper, but that the in-court identification did not meet the tests to remove the taint of illegality. We disagree.

Even though the photograph showing here was unnecessarily suggestive, as the State concedes, the in-court identification is still admissible if it is of independent origin. *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974), *vacated and remanded as to death penalty only*, 428 U.S. 902 (1976). The burden of showing that the in-court identification is of independent origin is on the State. *State v. McCraw*, 300 N.C. 610, 268 S.E. 2d 173 (1980). Standards to be used to determine reliability of the in-court identification were set out in *Neil v. Biggers*, 409 U.S. 188 (1972). They are:

> [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation and [5] the length of time between the crime and the confrontation.

409 U.S. at 199. *See also, State v. Clark*, 301 N.C. 176, 183, 270 S.E. 2d 425, 429 (1980). Our application of these factors to this case leads us to find the in-court identification proper.

First, Carlton looked into the defendant's face in the car until he pulled the gun. Carlton estimated that he looked at the defendant for three or four minutes. This also establishes the requisite degree of attention, the second factor.

On the third factor, Carlton described the person who robbed him as a large black man, probably over six feet tall and weighing over 200 pounds. Defendant is black, over six feet tall and weighs over 200 pounds. Fourth, he was certain at the confrontation. Carlton did not waiver in his identification at trial.

Fifth, the length of time between the crime and the trial was about ten weeks. That is not too long to damage the reliability of the in-court identification, especially since Carlton identified the

defendant as the man in one of two photographs within minutes after the crime. The court in *Neil* upheld a station-house identification as reliable that occurred seven months after the crime occurred.

We find enough evidence in the record to support the trial judge's findings of fact on this point and thus are bound by them. *See Clark*, 301 N.C. at 183, 270 S.E. 2d at 429.

We reject defendant's second assignment of error that the trial judge should have instructed the jury that the pointing and firing of the gun had to occur contemporaneously when he charged on the assault with a deadly weapon charge. A look at the instruction on this point reveals that any reasonable juror would not have thought it ambiguous or misleading as the defendant claims. In reviewing instructions on appeal, they should be read contextually and as a whole. *State v. Wright*, 302 N.C. 122, 273 S.E. 2d 699 (1981).

[2] Defendant's next three attacks concern the resisting arrest charge. He first argues that testimony about his abusive behavior and language while he was handcuffed should not have been admitted because it is not relevant to this charge. We disagree.

G.S. 14-223, the resisting arrest statute that defendant was convicted under, states "If any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty. . . ." Defendant's conduct, even while handcuffed, is relevant to his guilt under the statute because it illustrates his general demeanor. "[I]t is well established in this jurisdiction that in criminal cases, every circumstance that is calculated to shed any light upon the supposed crime is admissible into evidence." *State v. Bundridge*, 294 N.C. 45, 51, 239 S.E. 2d 811, 816 (1977).

[3] The second attack on this charge is also erroneous. Defendant contends that it was incorrect to instruct the jury that he threatened the officers when he was charged with resisting arrest. His basic argument is that the indictment did not give him notice that the threats would be used against him.

An indictment for resisting arrest must only include a general description of the defendant's actions. *State v. Wiggs*, 269 N.C. 507, 153 S.E. 2d 84 (1967). That standard was certainly met

here where the indictment charges that defendant "unlawfully and wilfully did resist, delay and obstruct PSO W. P. Hoffman . . . by struggling with Officer W. P. Hoffman and attempting to get free of PSO W. P. Hoffman's grasp." This indictment was notice to the defendant that he should expect the facts surrounding the arrest to be brought out at trial, including his abusive language.

[4]　Defendant's third contention on this charge is that by his instructions the trial judge took a question of fact from the jury on if defendant's conduct was resisting arrest under the statute. The judge stated:

> So I charge you that if you find from the evidence beyond a reasonable doubt that . . . the defendant . . . willfully and unlawfully struggled to get away and threatened W. P. Hoffman . . . while the officer was making a lawful arrest, it would be your duty to return a verdict of guilty as to this offense. However, if you do not so find or if you have a reasonable doubt as to one or more of those things, it would be your duty to return a verdict of not guilty as to that offense.

The instruction on this offense was proper because the judge gave the jury the duty of determining if the evidence proved all elements of the crime. We will not speculate on what the jury "could have found" as the defendant suggests. There was sufficient evidence to support the guilty verdict on this charge.

[5]　A final attack by defendant alleges that the summary of the evidence by the trial judge in his instruction was prejudicial because he did not label any of his summary as defendant's evidence. We find no error on this point for the following reasons.

First, the summary met the G.S. 15A-1232 requirement that a trial judge "is not required to state the evidence except to the extent necessary to explain the application of law to the evidence." Second, the judge instructed on all material features of the case as required by *State v. Ward,* 300 N.C. 150, 266 S.E. 2d 581 (1980). Finally, even though the defendant presented no evidence, the trial judge stated facts favorable to him in summarizing the State's case. An example would be where the summary concluded that Officer Hoffman saw the gun pointed in his direction, but only heard, rather than saw, a shot.

No error.

Judges MARTIN and WHICHARD concur.