STATE OF NORTH CAROLINA v. SIDNEY RAY CRUDUP

No. COA02-649

(Filed 20 May 2003)

**Confessions and Incriminating Statements— custodial inter-rogation—motion to suppress-failure to give Miranda warnings**

The trial court erred in a felonious possession of cocaine case by denying defendant's motion to suppress incriminating statements made without Miranda warnings in response to police questioning while he was handcuffed and detained, and defendant is entitled to a new trial because: (1) the totality of circumstances revealed that defendant was in custody when he was immediately handcuffed and detained as a possible burglary suspect; (2) defendant was being interrogated when a reasonable officer would have known that any response to the pertinent questions would have incriminated defendant; (3) defendant was not subjected to general on-the-scene questioning and the circumstances of this case exceeded the narrow scope of the public safety exception; and (4) the error was not harmless when the State's evidence of constructive possession rested upon defendant's unconstitutionally procured statement claiming possession of the items in an apartment which rested on defendant's physical presence in a house where he did not reside.

Appeal by defendant from judgment entered 17 October 2001 by Judge Henry W. Hight, Jr., in Superior Court, Wake County. Heard in the Court of Appeals 12 March 2003.

*Attorney General Roy Cooper, by W. Richard Moore, Special Deputy Attorney General, for the State.*

*Paul Pooley, for the defendant-appellant.*

STATE v. CRUDUP

[157 N.C. App. 657 (2003)]

WYNN, Judge.

Sidney Ray Crudup appeals his conviction for felonious possession of cocaine and presents one issue: Did the trial court err by admitting defendant's incriminating statements (made without *Miranda* warnings in response to police questioning while handcuffed and detained) in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966)? We conclude, based upon the totality of the circumstances, defendant was subjected to an unconstitutional custodial interrogation. Furthermore, we hold that this error was not harmless beyond a reasonable doubt; accordingly, we grant defendant a new trial.

In February 2001, James Patterson rented an apartment to defendant with the understanding that defendant would not reside in the apartment; instead, defendant's girlfriend and baby would reside therein. Under that understanding, Patterson gave one key to defendant. On 22 May 2001, Patterson asked defendant to move his girlfriend and baby out of the apartment because of delinquent rent payments. After arguing, Patterson called the police and, for reasons not revealed in the record, reported a break-in.

In response to Patterson's call, Officer Jeff Marbrey and five to six other officers went to the apartment to investigate the alleged break-in. However, as Officer Marbrey prepared to enter the residence, defendant exited the front door. Three officers handcuffed defendant and detained him as a burglary suspect. Thereafter, Officer Marbrey and another officer searched the house for the alleged burglar; in the course of doing so, Officer Marbrey observed numerous plastic sandwich bags in the bedroom closet. Upon closer inspection, Officer Marbrey discovered what was later determined to be crack cocaine. No one else was found in the house. Shortly thereafter, Officer Marbrey asked defendant if he: (1) resided in the house, (2) was the only resident, and (3) owned the possessions found on the premises. Defendant answered the questions affirmatively. Officer Marbrey placed defendant under arrest for drug possession.

At trial, over defendant's objection, the trial court admitted defendant's inculpatory statements into evidence. The trial court reasoned that the questions "by the officers were objective and reasonable . . . for their own protection [and] the protection of the public at large." On 17 October 2001, defendant was convicted of possession of cocaine and sentenced to 8 to 10 months in the North Carolina Department of Corrections. On appeal, defendant assigns error to the admission of his inculpatory statements into evidence. Furthermore,

STATE v. CRUDUP

[157 N.C. App. 657 (2003)]

defendant contends that the statements were incurably prejudicial. After carefully reviewing the record, we agree.

"It is well-established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact 'are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting.' " *State v. Buchanan*, 353 N.C. at 336, 543 S.E.2d at 826 (citation omitted). "The determination of whether a defendant was in custody, based on those findings of fact, however, is a question of law and is fully reviewable by this Court." *State v. Briggs*, 137 N.C. App. 125, 128, 526 S.E.2d 678, 680 (2000) (citations omitted). Likewise, "the trial court's determination of whether an interrogation is conducted while a person is in custody [also] involves reaching a conclusion of law, which is fully reviewable on appeal." *Buchanan*, 353 N.C. at 336, 543 S.E.2d at 826 (citation omitted). Accordingly, we review the trial court's determination that defendant was not entitled to *Miranda* warnings under a *de novo* review.

"*Miranda* warnings are required only when a defendant is subjected to custodial interrogation." *State v. Patterson*, 146 N.C. App. 113, 121 552 S.E.2d 246, 253 (2001) (citations omitted). The *Miranda* Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. Accordingly, in determining whether defendant was entitled to *Miranda* protections this Court must make three inquires: First, was defendant in custody? Second, was defendant interrogated? Third, do any exceptions to the *Miranda* rule apply?

First, was defendant in custody? In *State v. Buchanan*, the Supreme Court of North Carolina held that "the appropriate inquiry in determining whether a defendant is in 'custody' for purposes of *Miranda* is, based on the totality of the circumstances, whether there was a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.' " *Buchanan*, 353 N.C. at 339, 543 S.E.2d at 828 (2001) (citations omitted). "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood this situation." *Id.* at 341-42, 543 S.E.2d at 829 (citations omitted).

Under the facts of this case, we conclude, as a matter of law, that defendant was in "custody." The record reveals that defendant was immediately handcuffed and detained as a possible burglary suspect.

While handcuffed, defendant was questioned while four officers, including Officer Marbrey, surrounded him. Most assuredly, defendant's freedom of movement was restrained to the degree associated with a formal arrest. A reasonable person under these circumstances would believe that he was under arrest. *See e.g.*, *State v. Johnston*, 154 N.C. App. 500, 503, 572 S.E.2d 438, 440 (2002) (holding "that handcuffing defendant in the back of a police car" constituted custody under *Buchanan.*).

Second, was defendant interrogated? Our Supreme Court has held that "any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect" constitute an interrogation. *State v. Golphin*, 352 N.C. 364, 406, 533 S.E.2d 168, 199 (2000).

In the case *sub judice*, after searching the residence and finding what he believed to be crack cocaine, Officer Marbrey questioned defendant, asking if he or anyone else lived in the residence and whether he owned the contents therein. Unquestionably, a reasonable officer would know, or should have known, that any response to these questions would have incriminated defendant. If defendant denied having a right to be in the home, then defendant's response would have tended to incriminate him as a burglar. On the other hand, if defendant admitted that he lived at the home and owned the possessions therein, then his response would have tended to incriminate him for possessing cocaine. Therefore, under the definition articulated by our Supreme Court in *Golphin*, we conclude that defendant was interrogated.

Third, do any exceptions to the *Miranda* rule apply? The trial court in this case held that defendant was not entitled to *Miranda* warnings because (1) the questions were permissible as routine on-the-scene questions, and (2) the questions were permissible under the public safety exception.

*Miranda* warnings are not required during normal investigative activities conducted prior to arrest, detention, or charge. *Miranda*, 384 U.S. at 477; *State v. Meadows*, 272 N.C. 327, 158 S.E.2d 638 (1968). In determining whether specific questions constitute custodial interrogation or general on-the-scene questioning, this Court has found the following factors to be relevant: (1) the nature of the interrogator, (2) the time and place of the interrogation, (3) the degree to which suspicion had been focused on the defendant, (4) the nature of the interrogation and (5) the extent to which defendant was restrained or free

**STATE v. CRUDUP**

[157 N.C. App. 657 (2003)]

to leave. *State v. Clay*, 39 N.C. App. 150, 155, 249 S.E.2d 843, 846-47 (1978), *rev'd on other grounds by* 297 N.C. 555, 256 S.E.2d 176 (1979). While none of the factors standing alone is determinative, each factor is relevant.

In light of these factors, we hold that defendant was subjected to a custodial interrogation and not general on-the-scene questioning because: (1) defendant was interrogated by a police officer; (2) defendant was interrogated while in handcuffs; (3) Officer Marbrey testified that defendant was immediately considered a burglary suspect; (4) Officer Marbrey asked incriminating questions; and (5) defendant was not free to leave.[1]

In the alternative, the trial court found, and the State contends, that the questions asked were legitimately based upon *Miranda*'s "public safety exception." *State v. Brooks*, 337 N.C. 132, 144, 446 S.E.2d 579, 587 (1994). In *New York v. Quarles*, 467 U.S. 649 (1984), the United States Supreme Court held that *Miranda* warnings are not required where "police officers ask questions reasonably prompted by a concern for the public safety." The essential purpose of the public safety exception is the "objectively reasonable need to protect the police or the public from any immediate danger associated with . . . weapon[s]." *Id.* at 659. However, the *Quarles* Court characterized the public safety exception as a "narrow exception," intended to neutralize volatile situations and to address situations where spontaneity rather than adherence to a police manual is necessary.

In the case *sub judice*, the trial court concluded that "the questioning by the officers [was] objective and reasonable . . . for their own protection [and] the protection of the public at large." We hold the circumstances in this case exceed the narrow scope of the public safety exception. Defendant was handcuffed and surrounded by three officers. There was no risk of imminent danger to the public, the officers, or even to the defendant. Absent the pro-

---

1. Of the three questions asked by Officer Marbrey, only two exceeded the scope of either the on-the-scene general questioning or routine booking exceptions. *See e.g.*, *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990) (where Supreme Court held that questions regarding a suspect's name, address, physical characteristics, date of birth, are permitted under the 'routine booking question' exception which exempts from *Miranda*'s coverage certain "biographical data necessary to complete booking or pretrial services.").

Under these exceptions, defendant's statement that he lived at the residence were permissible. However, questions regarding who else lived in or stayed at the home, and the ownership of the belongings in the home were, under the particular facts of this case, outside the scope of these exceptions.

tection of this exception, or any other exception, the officers had a duty to administer to defendant his *Miranda* rights before proceeding with questioning. Accordingly, the trial court committed error by not suppressing defendant's inculpatory statements obtained in violation of *Miranda*.

While we conclude that the trial court erred in admitting defendant's inculpatory statements, we recognize that not all constitutional errors warrant a new trial. Under N.C. Gen. Stat. § 15A-1443(b) (2002), "[a] violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt." An error of constitutional magnitude will be held to be harmless beyond a reasonable doubt only when "the court can declare a belief . . . that there is no reasonable possibility that the violation might have contributed to the conviction." *State v. Lane*, 301 N.C. 382, 387, 271 S.E.2d 273, 277 (1980) (emphasis added). After carefully reviewing the record, we conclude, in light of the State's tenuous evidence of defendant's constructive possession, the trial court's error was not harmless beyond a reasonable doubt.[2]

To convict a defendant of possessing a controlled substance, the State must prove beyond a reasonable doubt that defendant knowingly possessed the substance. *State v. Givens*, 95 N.C. App. 72, 76, 381 S.E.2d 745, 748 (1989). Knowledge may be shown even where the defendant's possession of the illegal substance is merely constructive rather than actual. *See, e.g., State v. Harvey*, 281 N.C. 1, 187 S.E.2d 706 (1972). Constructive possession may be inferred when a defendant has exclusive control over the premises where a substance is found. *State v. Givens*, 95 N.C. App. at 76, 381 S.E.2d at 871. Even where a defendant has nonexclusive control over the premises, one can infer constructive possession if other incriminating circumstances exist to show defendant had the power and intent to control the substance. *Id.*

In a strikingly similar case, *State v. Washington*, 330 N.C. 188, 410 S.E.2d 55 (1991), a police officer observed a vehicle with a broken headlight and other damage. Suspecting a possible hit and run, the officer stopped the vehicle. Defendant, the driver of the vehicle, did not have a license. Accordingly, the officer placed defendant in his

2. As noted, the burden is upon the State to show that a constitutional error is harmless beyond a reasonable doubt. The State's brief, six pages in length, does not make one argument that the error was harmless beyond a reasonable doubt. On this basis alone—the State's failure to shoulder its burden—we could find prejudice.

patrol car while checking his identity. Upon returning to defendant's car, the officer noticed a round of ammunition on the floorboard. The officer asked defendant, still sitting in the backseat of the patrol car, where the gun was located. Defendant denied having a gun, and, further, stated that the car did not belong to him. Furthermore, defendant stated: "Man, there ain't no gun in the car. It's not my car. You can search it, you're not going to find anything."

While searching the vehicle, the officer found small plastic bags with a white powdery substance, later proved to be cocaine. The officer showed the bags to defendant and said, "look what I found." Defendant said that "he had bagged up baking soda to look like cocaine so that he could sell it as cocaine and make a good profit." At that point, the officer placed defendant under arrest for possession of cocaine.

At trial, defendant moved to suppress his inculpatory statements because they were obtained in violation of *Miranda*. Although defendant's movement was involuntarily restricted, the trial court found that defendant was not "in custody." Accordingly, the trial court concluded that defendant was not entitled to *Miranda* warnings.

Our Supreme Court, based upon Judge Greene's dissent, reversed the trial court's decision. In addition to finding custodial interrogation, the Court found that the error was not harmless beyond a reasonable doubt. Thus, the Court adopted Judge Greene's reasoning that: "Without the unlawfully obtained statements, the only evidence of the defendant's guilt [was] circumstantial. As to the possession element, the only evidence is that the cocaine was found in a car driven by the defendant. However, the car belonged to someone else." Accordingly, the Court held that "in light of the less than overwhelming circumstantial evidence, [we conclude admission of defendant's statement] was not harmless error beyond a reasonable doubt." *State v. Washington*, 330 N.C. 188, 188, 410 S.E.2d 55, 56 (1991) (adopting 102 N.C. App. 535, 538-40, 402 S.E.2d 851, 853-55 (1991) (Greene, J., dissenting)).

In the case *sub judice*, the State's evidence of constructive possession substantially rested upon defendant's unconstitutionally procured statement claiming possession of the items in the apartment. Absent this evidence, the State's theory of constructive possession, as in *Washington*, rested on defendant's physical presence in a house where he did not reside. Based on this scant circumstantial evidence,

it can not be said that "there is no reasonable possibility that the violation might have contributed to the conviction." *State v. Lane*, 301 N.C. at 387, 271 S.E.2d at 277. Accordingly, we conclude that the trial court error in admitting defendant's incriminating statements was not harmless beyond a reasonable doubt. Defendant is therefore entitled to a,

New trial.

Judges TIMMONS-GOODSON and LEVINSON concur.