**STATE v. HEMPHILL**

[219 N.C. App. 50 (2012)]

STATE OF NORTH CAROLINA v. WILLIAM EDWARD HEMPHILL, JR.

No. COA11-639

(Filed 21 February 2012)

**1. Search and Seizure—motion to suppress evidence and statements—reasonable articulable suspicion—flight—investigatory stop—pat-down for dangerous items**

The trial court did not err in an attempted felonious breaking or entering, possession of implements of housebreaking, and resisting a public officer case by denying defendant's motions to suppress evidence collected and defendant's statements. Defendant's flight, combined with the totality of circumstances, was sufficient to support a reasonable articulable suspicion and an investigatory stop. Once the officer felt a screwdriver and wrench during the pat-down of defendant, he was justified in removing these items as they constituted both a potential danger to the officer and were further suggestive of criminal activity being afoot.

**2. Confessions and Incriminating Statements—motion to suppress pre-Miranda statements—admission of guilt**

Although the trial court erred in an attempted felonious breaking or entering, possession of implements of housebreaking, and resisting a public officer case by failing to grant defendant's motion to suppress his pre-*Miranda* statements that he was breaking into Auto America and that he ran from an officer because he did not want to be caught, defendant was not prejudiced because defendant admitted his guilt after having been given his *Miranda* rights.

**3. Constitutional Law—effective assistance of counsel—failure to object**

Defendant did not receive ineffective assistance of counsel in an attempted felonious breaking or entering and possession of implements of housebreaking case based on his attorney's failure to object to the admission of the tools and defendant's statements at trial. The screwdriver and wrench were properly seized pursuant to a constitutional stop and frisk, and defendant was not prejudiced by the admission of his pre-*Miranda* statements.

STATE v. HEMPHILL

[219 N.C. App. 50 (2012)]

**4. Indictment and Information—misdemeanor resisting an officer—general description of actions sufficient**

The trial court did not err by failing to dismiss the charge of misdemeanor resisting an officer even though defendant contended the indictment for this charge was fatally defective. An indictment for resisting arrest must only include a general description of defendant's actions, and the indictment's general language was sufficient to put defendant on notice that the events surrounding his arrest would be brought out at trial.

Judge HUNTER, Robert C., concurring in result in separate opinion.

Appeal by Defendant from judgments entered 2 December 2010 by Judge Richard D. Boner in Superior Court, Mecklenburg County. Heard in the Court of Appeals 8 November 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Martin T. McCracken, for the State.*

*M. Alexander Charns for Defendant-Appellant.*

McGEE, Judge.

Charlotte-Mecklenburg Police Officer Charles Adkins (Officer Adkins) was dispatched to Auto America, a used car sales business, on 10 February 2010, at approximately 10:10 p.m., in response to an anonymous call reporting suspicious activity involving two African American men, one wearing a white "hoodie." Auto America was closed for the day and the gate was closed. Officer Adkins saw Defendant, wearing a white hoodie, peering around a white van. Officer Adkins was in a marked patrol car, and was wearing his standard police uniform. Officer Adkins testified:

> As soon as [Defendant] saw me, he began to run. He ran around the left side of the business and continued to run behind the business. As soon as he took off, I chased after him.
>
> . . . .
>
> As soon as he started running, I began to run after him, and I yelled out—I gave him several verbal commands to stop. I identified myself as a police officer and told him to stop.
>
> He continued to run. He ran around the building. We ran through the car lot, all the parked cars there, and he ran in

STATE v. HEMPHILL

[219 N.C. App. 50 (2012)]

front of a Mexican restaurant and behind a dumpster there where I caught him.

Defendant "was trying to hide behind a dumpster" when Officer Adkins caught up with him. Officer Adkins had his Taser out, and put Defendant on the ground. While restraining Defendant with handcuffs, Officer Adkins asked Defendant why he was running. Defendant replied that he was breaking into Auto America and did not want to get caught. When Officer Adkins conducted a pat-down search, he recovered a ten-inch screwdriver from Defendant's back left pocket and a small wrench from Defendant's back right pocket. Officer Adkins walked Defendant back to the patrol car and advised Defendant of his *Miranda* rights. Additional officers arrived on the scene, and located a sledgehammer behind the white van where Officer Adkins had originally spotted Defendant. Near the sledgehammer, the officers found an approximately "three-foot by three-foot . . . hole in the wall that went about two feet deep, and it actually punctured through the wooden paneling inside of what appeared to be an office." Officer Adkins then questioned Defendant about the sledgehammer and the hole in the wall of Auto America. Defendant "stated that he brought the tools earlier in the day and that he hid them so that he could break into the business that night."

Defendant was charged with attempted felonious breaking and entering, possession of implements of housebreaking, and resisting a public officer. Defendant was also charged with having attained habitual felon status. At trial, Defendant moved to suppress both evidence collected and Defendant's statements, arguing that the initial detention of Defendant was unconstitutional. Defendant's motions were denied. A jury found Defendant guilty of attempted felonious breaking or entering, possession of implements of housebreaking, resisting a public officer, and of having attained habitual felon status. Defendant appeals.

## I. Motions to Suppress

[1] Defendant argues that the trial court erred in denying his motions to suppress. We disagree.

### A. Standard of Review

"[T]he scope of appellate review of an order [on a motion to suppress evidence] is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively

binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." Defendant does not challenge any of the trial court's findings of fact in the order denying his motion to suppress. Defendant assigns error solely to the trial court's denial of his motion. Accordingly, the only issues for review are whether the trial court's findings of fact support its conclusions of law and whether those conclusions of law are legally correct.

*State v. Stanley*, 175 N.C. App. 171, 174-75, 622 S.E.2d 680, 682 (2005) (citations omitted).

### B.  Discussion

Following the hearing on Defendant's motions to suppress, the trial court made the following findings of fact:

1.  On February 10th, 2009, Charles Adkins, an officer of the Charlotte-Mecklenburg Police Department, was dispatched to a business located at 6802 South Boulevard in Charlotte, North Carolina. The business was a used car lot.

2.  The officer arrived at the business at approximately 10:10 p.m. in response to a suspicious persons call from an unknown citizen. When the officer arrived, the business was closed.

3.  The parking lot of the business was lighted. Officer Adkins saw the [D]efendant peering around a white van parked at the business. He described the [D]efendant as a heavyset black male wearing a white hoody.

4.  When Officer Adkins saw the [D]efendant, the [D]efendant began to run. Officer Adkins gave chase. The [D]efendant ran down the side of the office of the used car lot and behind the building toward an adjacent business.

5.  Officer Adkins yelled for the [D]efendant to stop and identified himself as a police officer. The [D]efendant continued to run.

6.  Officer Adkins pursued the [D]efendant approximately one-eighth of a mile to a dumpster located at the adjacent business. The [D]efendant was observed trying to hide behind the dumpster.

7.  Officer Adkins subdued the [D]efendant on the ground and handcuffed him. While handcuffing the [D]efendant, Officer Adkins asked the [D]efendant why he ran. The [D]efendant

responded, "I didn't want to get caught because I was breaking into the business."

8. Officer Adkins patted down the [D]efendant's person and felt objects in his pockets. The objects were removed from the [D]efendant's person. They were a wrench and a screwdriver.

9. The officer took the [D]efendant to his patrol car where he was secured. Other police officers arrived at the scene.

10. Office[r] Adkins and another police officer found a large sledgehammer near the van where the [D]efendant had been observed previously, and the officers saw a large hole in a wall of the office building at the used car lot.

11. Officer Adkins returned to the patrol car and gave the [D]efendant the Miranda rights warning. The [D]efendant indicated he understood the rights and was willing to speak with the officer.

12. In response to questions, the [D]efendant said that he had ridden a bus to the used car lot. The [D]efendant stated that he had brought tools to the location earlier in the day and had hidden them so that he could use them to break into the business.

13. Having placed the [D]efendant under arrest, the officer took the [D]efendant to jail.

14. The [D]efendant never requested an attorney at any time during the questioning by Officer Adkins.

Based upon the foregoing findings of fact, the trial court made the following conclusions of law:

1. When Officer Adkins subdued the [D]efendant behind the dumpster, the officer had a reasonable articulable suspicion that criminal activity had taken place. Based upon the totality of the circumstances observed by the officer, including the time of day, the business where the [D]efendant was observed, the [D]efendant's actions behind the van and the fact that the [D]efendant attempted to flee, refusing to heed the officer's directive to stop, Officer Adkins was justified in detaining the [D]efendant and in handcuffing the [D]efendant.

2. Officer Adkins was justified in patting down the [D]efendant for his safety under the circumstances. The removal of the screwdriver and wrench from the [D]efendant's person were

the result of the pat-down during an investigative detention based upon a reasonable articulable suspicion.

3. At the time the [D]efendant made the statement[,] "I didn't want to get caught because I was breaking into the business," the [D]efendant had not been arrested and was being detained for investigation. Therefore, the Miranda warnings were not required at that point.

4. The subsequent statements made by the [D]efendant in response to the officer's questions were made after the administration of the Miranda warnings and were made freely, voluntarily and with knowledge of the [D]efendant's right to remain silent.

5. The detention of the [D]efendant, the seizure of the screwdriver and wrench, and the statements obtained from the [D]efendant on February 10th, 2009 did not violate any of the rights of the [D]efendant under the Constitution of the United states of America or the Constitution of the State of North Carolina.

6. The [D]efendant's statements made to Officer Adkins and the evidence seized from the [D]efendant are admissible at the trial of this action.

Based upon the foregoing findings of fact and conclusions of law, it is therefore ordered that the [D]efendant's motions to suppress evidence are hereby denied.

We hold that the trial court's findings of fact support its conclusions of law and ruling that Officer Adkins had a reasonable articulable suspicion that criminal activity was afoot at the time Officer Adkins detained Defendant. The unchallenged findings of fact show that Officer Adkins was informed after 10:00 p.m. that there had been a report of suspicious activity at Auto America at a time Auto America was closed for business. When Officer Adkins arrived at Auto America he saw Defendant, who generally matched the description of one of the individuals reported, peering from behind a van parked at Auto America. When Defendant spotted Officer Adkins, Defendant ran away from him. Defendant ignored Officer Adkins when he shouted for Defendant to stop, and Officer Adkins ran after Defendant for about an eighth of a mile. When Officer Adkins caught up with Defendant, Defendant was attempting to hide behind a dumpster. When considered together and in context, these facts were suf-

ficient to raise a reasonable suspicion that criminal activity was afoot, and that Defendant was involved. *See State v. Butler*, 331 N.C. 227, 234, 415 S.E.2d 719, 723 (1992); *State v. Willis*, 125 N.C. App. 537, 541-42, 481 S.E.2d 407, 410-11 (1997).

The United States Supreme Court, in discussing the significance of the flight of a defendant, stated:

> Headlong flight—wherever it occurs—is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.

*Illinois v. Wardlow*, 528 U.S. 119, 124-25, 145 L. Ed. 2d 570, 576-77 (2000) (citation omitted). The Court further stated:

> "[R]efusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not "going about one's business"; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

*Id.* at 125, 145 L. Ed. 2d at 577 (citation omitted). In the present case, Defendant's flight, combined with the totality of the circumstances, was sufficient to support a reasonable articulable suspicion and the investigatory stop. *See State v. Jones*, 304 N.C. 323, 329, 283 S.E.2d 483, 486 (1981); *Willis*, 125 N.C. App. at 541-42, 481 S.E.2d at 410-11.

Defendant argues that the stop was unconstitutional, but does not specifically argue that the pat-down of Defendant incident to the stop was unconstitutional, even if the stop itself was constitutional. We hold that once Officer Adkins felt the screwdriver and wrench during the pat-down, he was justified in removing these items as they constituted both a potential danger to Officer Adkins, and were further suggestive of criminal activity being afoot at Auto America.

## II. *Miranda* Warnings

[2] Defendant also contends that his response to Officer Adkins's questioning while Defendant was on the ground and being restrained with handcuffs should have been suppressed because Officer Adkins had not "mirandized" Defendant at that time. We agree.

> "It is well established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact 'are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting.' " "The determination of whether a defendant was in custody, based on those findings of fact, however, is a question of law and is fully reviewable by this Court."

*State v. Johnston*, 154 N.C. App. 500, 502, 572 S.E.2d 438, 440 (2002) (citations omitted).

The concurring opinion confuses Fourth Amendment analysis concerning the permissible scope of an investigatory detention with the appropriate Fifth Amendment analysis required to determine whether *Miranda* warnings are required. The subjective intent of Officer Adkins is of no consequence in the relevant Fifth Amendment analysis. Nor is the reasonableness of Officer Adkins's actions in the context of detaining Defendant for investigatory or *"Terry* stop" purposes.

> The *Miranda* Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. "[T]he appropriate inquiry in determining whether a defendant is in 'custody' for purposes of *Miranda* is, based on the totality of the circumstances, whether there was a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.' " *Buchanan*, 353 N.C. at 339, 543 S.E.2d at 828 (citations omitted). The United States Supreme Court has consistently held that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Id.* at 341, 543 S.E.2d at 829 (quoting *Stansbury v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)). "A policeman's unarticulated plan has no bearing on the question of whether a suspect was 'in custody' at a particular time; the only relevant

inquiry is how a reasonable man in the suspect's position would have understood his situation." *Buchanan*, 353 N.C. at 341–42, 543 S.E.2d at 829 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)).

*Johnston*, 154 N.C. App. at 502-03, 572 S.E.2d at 440-41.

As [the United States Supreme Court has] repeatedly emphasized, whether a suspect is "in custody" is an objective inquiry. "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest."

*J.D.B. v. N. Carolina*, ___ U.S ___, ___, 180 L. Ed. 2d 310, 322 (2011) (citation omitted).

Officer Adkins's actions in detaining and handcuffing Defendant were reasonable under Fourth Amendment principles. However, Officer Adkins's questioning of Defendant must be analyzed under Fifth Amendment principles. The only exception carved out of the *Miranda* rule for custodial interrogation is the public safety exception as recognized in *New York v. Quarles*, 467 U.S. 649, 81 L. Ed. 2d 550 (1984). Officer Adkins's asking Defendant why Defendant ran did not implicate *Quarles* and, therefore, did not constitute the kind of question exempted from the *Miranda* requirements.

We hold that a reasonable person in Defendant's position, having been forced to the ground by an officer with a taser drawn and in the process of being handcuffed, would have felt his freedom of movement had been restrained to a degree associated with formal arrest. *See State v. Crudup*, 157 N.C. App. 657, 659-61, 580 S.E.2d 21, 24-25 (2003). The concurring opinion relies on *Crudup*, but we find that *Crudup* supports our position. This Court held in *Crudup*:

Under the facts of this case, we conclude, as a matter of law, that defendant was in "custody." The record reveals that defendant was immediately handcuffed and detained as a possible burglary suspect. While handcuffed, defendant was questioned while four officers, including Officer Marbrey, surrounded him.

> Most assuredly, defendant's freedom of movement was restrained to the degree associated with a formal arrest. A reasonable person under these circumstances would believe that he was under arrest.

*Id.* at 659-60, 580 S.E.2d at 24 (citations omitted). We do not find that the number of officers involved, or the degree to which the handcuffing of Defendant had been completed, distinguishes the facts in *Crudup* from those before us.

We further hold that Officer Adkins's questioning of Defendant at that time constituted an interrogation. *Id.* Therefore, the trial court should have granted Defendant's motion to suppress Defendant's statements that he was breaking into Auto America and that he ran from Officer Adkins because he did not want to be caught.

However, we also hold that Defendant was not prejudiced by the trial court's failure to suppress his statements. The trial court found as fact that, after Defendant was formally arrested and given his *Miranda* rights, Defendant stated that

> he had ridden a bus to [Auto America]. . . . [D]efendant stated that he had brought tools to the location earlier in the day and had hidden them so that he could use them to break into [Auto America].

Because Defendant admitted his guilt after having been given his *Miranda* rights, we cannot say that the failure to suppress his pre-*Miranda* statement was prejudicial or harmful. *State v. Tuttle*, 33 N.C. App. 465, 470, 235 S.E.2d 412, 415 (1977).

### III. Ineffective Assistance of Counsel

[3] Defendant further argues that his attorney was ineffective because his attorney failed to object to the admission of the tools and Defendant's statements at trial. We disagree.

Having determined that the screwdriver and wrench were properly seized pursuant to a constitutional stop and frisk, and that Defendant was not prejudiced by the admission of his pre-*Miranda* statements, we further hold that Defendant's counsel was not ineffective when Defendant's counsel failed to object to the admission of this evidence at trial.

## IV. Resisting an Officer

[4] Finally, Defendant argues that the trial court erred in not dismissing the charge of misdemeanor resisting an officer because the indictment for this charge was fatally defective. We disagree.

N.C. Gen. Stat. § 14-223 states: "If any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a Class 2 misdemeanor." N.C. Gen. Stat. § 14-223 (2011). An indictment charging a violation of N.C.G.S. § 14-223 must, *inter alia*, "state in a general way the manner in which [the] accused resisted or delayed or obstructed such officer." *State v. Fenner*, 263 N.C. 694, 700, 140 S.E.2d 349, 353 (1965) (citations omitted). Defendant argues that the indictment in this case failed to state with sufficient particularity the manner in which Defendant resisted, delayed or obstructed Officer Adkins. The indictment at issue stated in relevant part that Defendant resisted Officer Adkins "by not obeying [Officer Adkins's] command."

"An indictment for resisting arrest must only include a general description of the defendant's actions." *State v. Baldwin*, 59 N.C. App. 430, 434, 297 S.E.2d 188, 191 (1982) (citation omitted). In *Baldwin*, the indictment charged

> that [the] defendant "unlawfully and wilfully did resist, delay and obstruct [the officer] . . . by struggling with [the officer] and attempting to get free of [the officer's] grasp." This indictment was notice to the defendant that he should expect the facts surrounding the arrest to be brought out at trial, including his abusive language.

*Id.* at 435, 297 S.E.2d at 191-92; *see also State v. Lynch*, 94 N.C. App. 330, 333-34, 380 S.E.2d 397, 399 (1989). Likewise in the present case, the indictment's general language was sufficient to put Defendant on notice that the events surrounding his arrest would be brought out at trial. The only evidence presented at trial concerning a command given by Officer Adkins was Officer Adkins's command for Defendant to stop running, which Defendant failed to heed. We hold that the indictment for resisting arrest was not fatally defective.

No prejudicial error.

Judge CALABRIA concurs.

Judge HUNTER, Robert C., concurs in the result with separate opinion.

HUNTER, Robert C., Judge, concurring in result.

I concur with the majority that Defendant is not entitled to a new trial based on a violation of his *Miranda* rights. However, I disagree with the majority's conclusion that Defendant was in custody at the time Officer Adkins asked Defendant why he was running. Because I conclude Defendant was not in custody, he was not subject to custodial interrogation, and was not entitled to a *Miranda* warning at the time he stated that he tried "to break[] into the business." Accordingly, I would affirm the trial court's denial of Defendant's Motion to Suppress.

Upon review of a trial court's ruling on a motion to suppress, the standard of review is whether the trial court's findings of fact are "supported by competent evidence" and, if so, whether the conclusions of law are "legally correct, reflecting a correct application of applicable legal principles to the facts found." *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (citation and internal quotation marks omitted). If a defendant does not challenge a trial court's findings of fact on appeal but "assigns error solely to the trial court's denial of his motion," as in the present case, this Court's review is limited to "whether the trial court's findings of fact support its conclusions of law and whether those conclusions of law are legally correct." *State v. Stanley*, 175 N.C. App. 171, 175, 622 S.E.2d 680, 682 (2005).

Based on the evidence in the record, I would affirm the trial court's denial of Defendant's Motion to Suppress because: (1) the trial court's conclusion of law that Defendant was not arrested but only detained for investigation at the time he made the inculpatory statement[1] is supported by the findings of fact and reflects a correct application of our case law; and (2) Defendant was not in custody for purposes of *Miranda* at the time he made the inculpatory statement.

Based on Officer Adkins' testimony at the hearing on Defendant's Motion to Suppress, the trial court made the following findings of fact:

> 6. Officer Adkins pursued [Defendant] approximately one-eighth of a mile to a dumpster located at the adjacent business. [Defendant] was observed trying to hide behind the dumpster.

---

1. Although Defendant made multiple inculpatory statements, my use of "the inculpatory statement" refers to the statement made by Defendant before he was given a *Miranda* warning: "I didn't want to get caught because I was breaking into the business."

7. Officer Adkins subdued [Defendant] on the ground and handcuffed him. While handcuffing [Defendant], Officer Adkins asked [Defendant] why he ran. [Defendant] responded, "I didn't want to get caught because I was breaking into the business."

During the hearing, Officer Adkins testified that at the time he caught Defendant, he had his Taser out but put it away once Defendant put his hands up in the air.

Consequently, the trial court made the following conclusion of law:

3. At the time [Defendant] made the statement "I didn't want to get caught because I was breaking into the business," [Defendant] had not been arrested and was being detained for investigation. Therefore, the Miranda warnings were not required at that point.

The first issue that must be addressed is whether Defendant was arrested during the investigatory stop. Our case law recognizes the "expan[sion]" of "the permissible scope of a *Terry* stop" whereby police officers are authorized to use reasonable means of detaining suspects during an investigative stop without escalating the stop into an arrest. *State v. Campbell*, 188 N.C. App. 701, 708-09, 656 S.E.2d 721, 727 (2008) (citation and quotation marks omitted); *see also State v. Carrouthers*, 200 N.C. App. 415, 419, 683 S.E.2d 781, 784 (2009) *(Carrouthers I)* (noting that police officers are authorized to "engage in conduct and use forms of force" associated with an arrest during an investigatory stop to maintain the status quo or to ensure personal safety without that conduct constituting a *de facto* arrest (citation and quotation marks omitted)). In *Campbell*, this Court concluded that the police officers were authorized to handcuff the defendant during an investigatory stop in order to maintain the status quo based on the defendant's known risk of flight. 188 N.C. App. at 708-09, 656 S.E.2d at 727; *see also State v. Carrouthers*, ____ N.C. App. ____, ____, 714 S.E.2d 460, 466 (2011) *(Carrouthers II)* (noting that the officer's handcuffing of the defendant was a "safety-related detainment," due to the presence of additional passengers in the defendant's car, and did not escalate the *Terry* stop into an arrest).

I agree with the majority's conclusion that the investigatory stop of Defendant was valid under the Fourth Amendment based on the totality of the circumstances. Officer Adkins' decision to handcuff Defendant after catching him was a reasonable means to maintain the

**STATE v. HEMPHILL**

[219 N.C. App. 50 (2012)]

status quo and prevent Defendant from trying to flee before Officer Adkins had a chance to investigate further. Additionally, it would have been reasonable to believe another suspect was present because the anonymous caller that reported suspicious activity at the Auto Mart stated that there were two men at that location. Therefore, even though Officer Adkins handcuffed Defendant during the investigatory stop, the handcuffing of Defendant did not escalate the stop into an arrest.

The second issue to be determined is whether Defendant was in custody at the time he made the inculpatory statement since custody encompasses not only a formal arrest but also situations where there is a restraint on a defendant's freedom of movement "of the degree associated with a formal arrest." *State v. Gaines*, 345 N.C. 647, 662, 483 S.E.2d 396, 405 (1997). The majority correctly notes that determination of whether a defendant was in custody for *Miranda* purposes requires a determination of whether, based on the totality of the circumstances, "there was a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.' " *Buchanan*, 353 N.C. at 339, 543 S.E.2d at 828 (citation omitted). The majority concludes that because a reasonable person in Defendant's position would have felt his freedom of movement restrained to a degree associated with an arrest, he was in custody and, thus, entitled to a *Miranda* warning.

Generally, *Terry* stops are not "subject to the dictates of *Miranda*." *Berkemer v. McCarty*, 468 U.S. 420, 440, 82 L. Ed. 2d 317, 334 (1984); *see also Maryland v. Shatzer*, ____ U.S. ____, ____, 175 L. Ed. 2d 1045, 1058 (2010) (noting that "the temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop . . . does not constitute *Miranda* custody" (internal citation omitted)). During a valid investigatory stop, a police officer may "ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer*, 468 U.S. at 439, 82 L. Ed. 2d at 334.

The case of *United States v. Leshuk*, 65 F.3d 1105, (4th Cir. 1995) provides guidance. A hunter found a marijuana cultivation site in a rural area. *Id.* at 1106. After he reported it to the sheriff's office, the hunter assisted two deputy sheriffs in locating the defendant. *Id.* at 1107. The hunter found the defendant, ordered him to put his hands

up, and briefly held the defendant by his arm. *Id.* at 1107, 1110.[2] The deputies asked the defendant a few questions regarding his purpose for being at that location and his identity. *Id.* at 1107.

Even though the defendant argued that he was in custody for *Miranda* purposes because a reasonable person in his position would have believed that he was in custody and not free to leave, the court held that this "objective belief . . . does not necessarily transform a lawful *Terry* stop into a custodial interrogation[.]" *Id.* at 1109. The court distinguished *Terry* stops from custodial interrogation as follows: "[i]nstead of being distinguished by the absence of any restriction of liberty, *Terry* stops differ from custodial interrogation in that they must last no longer than necessary to verify or dispel the officer's suspicion." *Leshuk*, 65 F.3d at 1109. Furthermore, the court noted that it has "concluded [in other cases] that drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest for *Miranda* purposes," and these same principles should apply to determine whether a defendant was in custody. *Id.* at 1109-10. Therefore, the court affirmed the trial court's holding that the defendant was not entitled to a *Miranda* warning because: (1) the "actions of the deputies and the turkey hunter amounted to a limited *Terry* stop necessary to protect their safety, maintain status quo, and confirm or dispel their suspicions"; (2) their actions were "reasonable precautions"; and (3) the questions were reasonably related to the investigatory stop. *Id.* at 1110; *see also United States v. Nunez-Betancourt*, 766 F. Supp. 2d 651, 660 (2011) (citing *Leshuk* and concluding that a brief yet total restriction of the defendant's liberty was a valid and reasonable means of protecting the officers' safety during a *Terry* stop).

As in *Leshuk*, even though a reasonable person in Defendant's position may not have felt free to leave once Officer Adkins placed Defendant in handcuffs, Defendant was not in custody because Officer Adkins' actions were reasonable means of protecting his personal safety and maintaining the status quo. Furthermore, Defendant's detention lasted only long enough for the officer to confirm his suspicion that Defendant was engaged in criminal activity.

---

2. The court noted that it included the actions of the hunter in its analysis since a reasonable person would have believed that the hunter was a law enforcement officer. *Leshuk*, 65 F.3d at 1113 n.3.

The circumstances surrounding the stop in the present case are distinguishable from cases where our courts have found a defendant was in custody after a valid investigatory stop. In *State v. Washington*, the defendant was in custody during an investigatory stop when he was placed in the back seat of the patrol car and questioned by officers. 102 N.C. App 535, 536-38, 402 S.E.2d 851, 852-53 (Greene, J. dissenting), *rev'd per curiam for reasons stated in dissent*, 330 N.C. 188, 410 S.E.2d 55 (1991). Similarly, in *State v. Crudup*, 157 N.C. App. 657, 659-60, 580 S.E.2d 21, 24 (2003), we held that the defendant was in custody after an investigatory stop because he was handcuffed and surrounded by four police officers at the time of questioning. In *State v. Johnston*, 154 N.C. App 500, 503, 572 S.E.2d 438, 441 (2002), we concluded that the defendant was in custody where, after police officers stopped the defendant's car, the defend-ant was told he was in " 'secure custody' " and "ordered out of his vehicle at gun point, handcuffed, placed in the back of a patrol car, and questioned by detectives." Additionally, in *In re L.I.*, ___ N.C. App. ___, ___, 695 S.E.2d 793, 798 (2010), we concluded that because the defendant was handcuffed and placed in the back of a police officer's patrol car, he was in custody for *Miranda* purposes.

However, in all of these cases, the police officers were not detaining the defendants in order to maintain the status quo because all defendants were cooperating with police at the time they were detained. In *Washington*, *Johnston*, and *In re L.I.*, the police officers asked the defendants to exit their vehicles and immediately placed them in the back of their police patrol cars even though the defendants did not attempt to flee or give any sign that they would not cooperate. *Washington*, 102 N.C. App. at 536, 402 S.E.2d at 852; *Johnston*, 154 N.C. App. at 440, 572 S.E.2d at 501; *In re L.I.*, ___ N.C. App. at ___, 695 S.E.2d at 796. Similarly, in *Crudup*, the police responded to the report of a break-in and saw the defendant leaving the location of the alleged crime. 157 N.C. App at 658, 580 S.E.2d at 23. The officers immediately placed the defendant in handcuffs even though he made no attempt to flee; this Court held the defendant was in custody. *Id.*

Furthermore, it was not necessary for the police officers' personal safety to detain the defendants during the investigatory stops in *Washington* and *Crudup*. In *Washington*, the police officers were not aware of a specific threat to their safety at the time they placed the defendant in the back of the patrol car. 102 N.C. App at 536, 402 S.E.2d at 852. Similarly, in *Crudup*, the police officers were responding to a

call of a possible break-in but had no information to suggest the presence of multiple suspects. 157 N.C. App at 658, 580 S.E.2d at 23.

Conversely, when Officer Adkins handcuffed Defendant, it was a reasonable means of protecting the officer's personal safety and maintaining the status quo by preventing Defendant from fleeing again. Defendant was detained pursuant to an investigatory stop and was not in custody. Therefore, I would hold that Defendant was not entitled to a *Miranda* warning at the time he made the inculpatory statement. To hold otherwise would require *Miranda* warnings any-time an officer needed to restrain a suspect during an investigatory stop in order to maintain the status quo or protect his or her safety. Accordingly, I would affirm the trial court's denial of Defendant's Motion to Suppress.